**DORR et al. v. UNITED STATES**
(four cases).
Nos. 6562–6565.

District Court, D. Massachusetts.

Feb. 3, 1937.

Hale & Dorr and George H. B. Green, all of Boston, Mass., for plaintiffs.

Robert H. Jackson, Asst. Atty. Gen., Andrew D. Sharpe and M. Carr Ferguson, Sp. Assts. to the Atty. Gen., and Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Asst. U. S. Atty., both of Boston, Mass.

McLELLAN, District Judge.

These are petitions to recover alleged overpayments of federal income taxes for

the calendar year 1930. The controversy arises over the Commissioner's failure to allow as deductions certain fees paid by the petitioners to the law firm of Hale & Dorr. The cases were tried upon a stipulation as to certain facts, which are as stipulated, and upon the testimony of Laurence E. Green, Esquire, a partner in the firm of Hale & Dorr. The following facts, which appear either from the testimony of Mr. Green or in the stipulation, suffice to present the issues:

In 1920, Arthur L. Parker had acquired 400 shares of stock of the Arnold & Winsor Company. In 1928, as the result of a reorganization, he exchanged these shares for 750 shares of preferred stock and 375 shares of common stock of General Foods Company. In 1929, in consequence of further reorganization, he exchanged these shares for a like number of shares of United Foods Company stock. In the same year, the United Foods Company converted its assets into cash, and offered to pay cash to its stockholders in return for their respective holdings.

Mr. Parker then consulted Hale & Dorr, stating that he lacked sufficient experience to manage alone the large amount of money receivable from the United Foods Company. Hale & Dorr carefully investigated all phases of the matter, including the question of tax liability. On December 2, 1929, in accordance with their advice, Mr. Parker transferred his United Foods common stock in varying amounts to Dudley H. Dorr and himself as trustees under four separate trust indentures, for the benefit of himself, his wife, and his two daughters, respectively. These trusts are the taxpayers in the present actions. The trust instruments gave the trustees broad powers of investment, but did not permit the trustees to go into business as such. Each trust sold 25 shares of United Foods Company common stock in 1929. The rest of the stock held by the trusts was sold in 1930.

It appears that the firm of Hale & Dorr maintained a statistical department, headed by a graduate of both the Harvard Business School and the Harvard Law School, so that partners who held funds in trust might receive reliable information concerning investments. Charges were made for this service.

On February 6, 1930, the four trusts paid to Hale & Dorr a total fee of $5,500. There was evidence and I find that of the total services rendered, which were covered by these payments, 11 per cent. was devoted to drafting of the trust instruments and 31 per cent. to work in connection with income tax returns and the computation of capital gain. These services were rendered prior to the creation of the trusts on December 2, 1929. Thirteen per cent. of the services consisted of the same type of work done after the formation of the trusts. The remaining 45 per cent. of the services consisted of advice concerning investments rendered with the assistance of the statistical department.

On March 16, 1931, the petitioners as trustees filed federal income tax returns for each of the four trusts, and duly paid in quarterly installments the tax shown to be due. The records of the trusts were kept on a cash basis. In each return, the total amount of the fee to Hale & Dorr charged to the trust in question was deducted as a business expense. Subsequently the returns were examined by an agent of the Commissioner of Internal Revenue, who disallowed the deductions. Additional taxes were then assessed upon each trust and collected. The petitioners conceded that so much of the fees as represented work done on the drafting of the trust instruments were not properly deductible, but filed claims for the refund of so much of the additional taxes as resulted from the disallowance of the remainder of the fees as business expenses. These claims were disallowed by the Commissioner and these actions were brought to recover the amounts claimed.

The applicable statutes are section 162 and section 23 (a) of the Revenue Act of 1928, 26 U.S.C.A. §§ 23 and note, 162 and note. Section 162 provides: "The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that," followed by exceptions not here material. Section 23 (a) permits a deduction, among other things, of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

It is conceded that expenses incurred in drafting the indentures are not properly deductible as expenses of the trusts. In so far as the work of determining the cost of Mr. Parker's United Foods Company stock, and the computation of his capital gain in the sale of that stock, was done as a part of the investigations undertaken in order to give Mr. Parker proper advice, it

stands on the same footing. Even if such expenses be regarded as merely undertaken in connection with making out income tax returns for the trusts, they still may not be deducted, unless it can be said that the trusts were engaged in a trade or business. J. W. Forgeus v. Commissioner of Internal Revenue, 6 B.T.A. 291. Similarly, expenses for advice as to investments are not deductible unless incurred in some trade or business of the trusts.

The determining factor is not whether the individual trustees are engaged in the business of managing trusts, but whether the trusts as such are engaged in a trade or business. It is evident from the language of section 162 that this question must be determined in the same manner and on the same basis as in the case of similar expenditures made by an individual. It is not enough to show that the expenses in question were ordinary and necessary in obtaining income. As stated in Monell v. Helvering (C.C.A.2 1934) 70 F.(2d) 631, 632: "If we were to agree with the argument of the petitioner's counsel that the real test of deductibility is whether the expense was an ordinary and necessary one in obtaining income, we would take what might be supported as a fair one. If Congress had intended to allow deductions on that basis, however, it would have been too simple and easy to have said so to make it reasonable to believe that such was intended by the language which plainly limited expenses deductible to those incurred ordinarily and necessarily in carrying on a trade or business."

In view of Van Wart v. Commissioner, 295 U.S. 112, 55 S.Ct. 660, 661, 79 L.Ed. 1336, it cannot be said that these trusts were engaged in any trade or business. In that case, it was held that attorney's fees, incurred by a guardian in establishing his right to receive the accrued income of a trust created in favor of his ward, were to be regarded as personal expenses, and not business expenses of the ward. The court said: "The ward was not engaged in any business. So far as appears, the same thing is true of the guardian."

Other cases to the general effect that the recipient of income from investments cannot be regarded as engaged in a trade or business when he incurs expenses for the preservation or protection of that income are Morse v. Helvering, 66 App.D. C. 96, 85 F.(2d) 262; Gibbs v. Commissioner of Internal Revenue, 24 B.T.A. 1028.

In the present cases, the trusts were merely engaged in investing property and receiving the income, and were not engaged in a trade or business within the meaning of the statute as interpreted by the cases cited above.

Let judgment be entered for the defendant in each case.