**FRICK v. DRISCOLL, Collector of Internal Revenue.**

No. 7742.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 5, 1941.

Decided May 29, 1942.

Carl J. Marold, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Gerald L. Wallace, Sp. Asst. to the Atty. Gen., Charles F. Uhl, U. S. Atty., and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., on the brief), for appellant.

Wm. S. Moorhead, of Pittsburgh, Pa. (Wm. F. Knox and Moorhead & Knox, all of Pittsburgh, Pa., on the brief), for appellee.

Before CLARK and JONES, Circuit Judges, and GANEY, District Judge.

GANEY, District Judge.

The taxpayer is the sole beneficiary of a trust hereinafter referred to as the Buildings Trust created by Section 6[1] of the will of her father, Henry C. Frick, who died December 2, 1919. Under the terms of the trust the entire net income from the trust corpus which consists of two large office buildings in Pittsburgh, Pennsylvania, known as the Frick Building and the Frick Building Annex, was to be paid to the taxpayer during her lifetime and after her death to such persons as she should appoint by will. The Union Trust Company of Pittsburgh was named trustee and has acted in that capacity ever since. Under Section 7[2] of his will, the testator, Henry C. Frick, created a trust known as the Endowment Trust, the purpose of which was the financing of extraordinary repairs to the Frick Building and the Frick Building Annex hereinabove referred to, which formed the corpus of the trust. The pertinent portions of the Revenue Acts of 1928 and 1932 covering taxation of trust income as between trustee and beneficiary in Section 162, 26 U.S.C.A. Int.Rev.Code, § 162.[3]

In 1920 the first year of the operation of the said Buildings Trust, in addition to paying the local real estate taxes on the two buildings in question for that year, the trustee withheld from distribution and set aside in a separate bank account, hereinafter known as Account No. 2, the Reserve for Taxes Account, funds out of the 1920 income of the trust for the purpose of paying the real estate taxes on the buildings for the following year 1921. In 1921 and in each subsequent year, including those involved here (1930 to 1933 inclusive), the trustee used a part or all of the money in this reserve fund for the payment of real estate taxes on the said buildings and re-

---

[1] Section 6: I devise unto The Union Trust Company of Pittsburgh, of the City of Pittsburgh, Pennsylvania, as Trustee, the building in the City of Pittsburgh known as the "Frick Building", * * * and the building in said City known as the "Frick Building Annex", together with the land upon which the same is erected * * * In trust, to hold the same to rent the offices, rooms and space therein * * * to collect and receive the rents, issues and profits thereof and out of the same to pay all taxes, insurance, repairs and other expenses of the trust, including a reasonable compensation to the said Trustee, and to pay and apply the residue of said rents, issues and profits unto my said daughter Helen C. Frick during her natural life.

[2] Section 7: I give and bequeath unto The Union Trust Company of Pittsburgh, of the City of Pittsburgh, Pennsylvania, as Trustee, the sum of One Million Dollars, in Trust, to hold the same during the life of my said daughter Helen C. Frick, and to invest and reinvest the same, and to collect and receive the income thereof, and after paying the expenses of the trust, including a reasonable compensation to said trustee, from time to time to apply said income, or if in the judgment of the said trustee it shall be necessary so to do, any part of the capital of the said trust fund, to the making of extraordinary repairs, restorations, replacements, betterments, additions and improvements in and to the said Frick Building and the Frick Building Annex and their equipment, and to pay and apply the residue of said income

not used for those purposes in each and every year to the use of my said daughter Helen C. Frick during her life.

[3] "§ 162. Net income. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—* * *

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduc-

plenished the reserve fund by payments from current receipts, so that at the end of each year the amount in the reserve fund was substantially the same as the year before. In other words, the trustee had at the beginning of the year 1921 in Account No. 2, known as Reserve for Taxes Account, the taxes for that year which as has been indicated had been set up in 1920, and he then paid the real estate taxes for 1921 from this fund so set up, and had transferred from Account No. 1, known as the Rent Account, in which was deposited all receipts of rent, to Account No. 2, known as Reserve for Taxes Account enough to replenish Account No. 2, so that at the end of the year 1921, there was a sufficient fund set aside in this Account No. 2 to pay the taxes for the following year 1922. Accordingly then beginning in the year 1920, if we assume that the income of the trust, before any deduction for real estate taxes, was $1,000,000.00, and the trustee deducted $100,000. for real estate taxes for the current year 1920 and then created also from current receipts a fund of $100,000.00 for taxes for the year 1921, there was distributable to the taxpayer in the year 1920 a fund of $800,000.00 for which she was properly taxable and $200,000.00 properly taxable to the trustee. However, it is the contention of counsel for the taxpayer that every succeeding year, including the years in question, 1931-32-33, the taxpayer should by reason of this method of accounting not be taxable for the amount in Account No. 2, Reserve for Taxes Account, since it was an accumulation of current income withheld from distribution and taxable to the trustee. In furtherance of this position the taxpayer contends that in Pennsylvania, a trustee may retain or receive as a separate fund a part of a trust income of one year to pay taxes becoming payable the following year in the interest of judicious management, and in support of this contention cites a number of Pennsylvania cases: In re Mathues' Estate, 322 Pa. 358, 185 A. 768; In re Sinnott's Estate, 310 Pa. 463, 165 A. 244; In re Sternberger's Estate, 121 Pa. Super. 50, 182 A. 723.

 Assuming the soundness of the Pennsylvania cases so cited, the most that can be said of them is that the trustee is given the right or discretion to withhold temporarily from distribution a sufficient amount of income to meet expenses falling due early in the following year. The statute here in question, Revenue Acts of 1928 and 1932, Sec. 161(a)(1), 26 U.S.C.A. Int. Rev.Code § 161(a)(1),[4] noted makes the only provision which deals specifically with accumulated income and when read in its entirety indicates that it is the only type of accumulated income that Congress intended should be known as trust income taxable to the trustee. An examination of Section 6 of the testator's will, Henry C. Frick, shows no direction to the trustee to withhold any part of the income or does it mention any discretion in the trustee to accumulate any part thereof, but provides clearly that the entire balance after payment of expenses is to be distributed to the taxpayer. The nub of the question therefore presented seems to be whether the temporary holding by the trustee, let us say in the year 1931, for real estate taxes, which are to be paid in 1932 is such a withholding and accumulation as to make the same taxable to the trustee rather than to the beneficiary. An accumulation has been defined in Bogert, Trusts and Trustees, vol. 1, chapter 13, § 217, as follows:

"An accumulation is an addition of income to the capital of the trust so that when it is disbursed, it will be paid out as a part of the corpus and not as current revenue. IF THE TRUSTEE SETS APART SOME INCOME AS A CONTINGENT FUND TO MEET FUTURE DEFICIENCIES IN INCOME OR FUTURE TRUST DEBTS, THERE IS A TEMPORARY WITHHOLDING OF THE INCOME SO TREATED, BUT THERE IS NOT AN ACCUMULATION. The sum set apart has not, and never will become a part of the capital sum" (Capitals our own).

The city and school taxes in Pittsburgh are payable in quarterly installments, the last payment of which is made in October and the County taxes are payable as early as May 31st, and accordingly the income withheld by the trustee from the preceding year was not therefore payable in January of the following year. As a matter of fact as the Government contends, since the trustee's income was well over a million

---

tion shall be included in computing the net income of the legatee, heir, or beneficiary."

[4] Section 161 (a) (1): "(1) Income accumulated in trust for the benefit of un-born or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust; * * *."

152

dollars and the same came to it in rather equal monthly installments, and since total real estate taxes did not for any year exceed $185,000.00, there was no showing by the trustee that he did not have each year sufficient money from current income to meet these taxes when payable.

■ There is likewise no merit in the contention of the trustee that it had to withhold the money for its own protection lest it become personally liable for taxes in the event of the death of the beneficiary, or the expiration of the trust before the taxes were paid, since the registered owner of the trust property was the "Union Trust Company, Trustee for Helen C. Frick", not the Union Trust Company. Accordingly, only trust assets would be subject to the payment of taxes and not the assets of the trustee.

■■ Since it is well settled that the question of whether trust income is distributable or not depends upon the trust instrument, Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Baltzell v. Mitchell, 1 Cir., 3 F.2d 428, and since no provision was made in the trust instrument in the instant case, giving the trustee discretion to accumulate earning, but rather on the contrary the instrument shows clearly that the testator, Henry C. Frick, intended the entire net income of the Buildings Trust to be distributed to the taxpayer, we hold there was error in the interpretation by the lower court that the trust instrument gave the trustee discretion to accumulate income within the meaning of the applicable Revenue Statutes.

■ Even if we are to assume that under the Pennsylvania law the trust instrument by some construction did give the trustee discretion to accumulate income, it is submitted that the position of the lower court is nevertheless erroneous, because an analysis of the stipulations and exhibits offered, demonstrates that the taxpayer not alone received distributions equal to the amount of the total of the net income of the trust, but that the amounts so received were current income.

It was stipulated that all of the current income of the Buildings Trust Fund was paid into the current Rent Account, Account No. 1, and from this account was transferred (1) cash distribution to the taxpayer; (2) transfers to Account No. 2, "Reserve for Taxes Account"; (3) transfers to Account No. 3, the "Reserve for Elevators Account"; and (4) transfers to Account No. 4, the "Working Fund Account", from which all expenses, excepting real estate taxes, were paid.

Keeping in mind this method of handling current income from the Buildings Trust Fund and taking the year 1932 as an illustration (all the other years here in question are the same, except a difference in the amount of the figures), it is quite obvious that the taxpayer received all of the current income for that year. At the beginning of the year the net income of the Buildings Trust for the year 1932, after deduction for real estate taxes paid in that year, was $519,566.72; this amount did not include a balance on hand in Rents Account, No. 1, as of January 1, 1932, which amounted to $117,922.86, for as stipulated this was distributed in cash in February 1932 to the taxpayer and accordingly cannot be considered since it represents income received in the year 1931. As set forth in Defendant's Exhibit 7, total cash distributions to the taxpayer out of the Rent Account, not including the $117,922.86 heretofore referred to, amounted to $400,-000.00; it was further stipulated that the income on securities held in Account No. 3, Reserve for Elevators, in the amount of $7,564.82, was distributed to the taxpayer, and also the balance in Account No. 1, being the Rent Account and No. 4, the Working Fund Account, less accounts payable, or $67,812.92; it was further stipulated that transfers to Account No. 3 amounting to $60,000.00 were to be treated as distributed to her; the addition of which amounts shows that the total actual distribution to the taxpayer or conceded to be distributed to her, was $535,377.74, which is $15,811.02 in excess of $519,566.72 the total stipulated net income of the Buildings Trust for the year 1932. Taking into account certain adjustments as shown on Defendant's Exhibit 7, the details of which need not be here gone into, we find the net amount distributed to petitioner to be $519,566.72, which is the stipulated net income both taxable and nontaxable of the Buildings Trust for the year 1932 after the deduction for real estate taxes. It will be noted in the computation as set forth by the Government in Exhibit 7, no amounts actually paid out for real estate taxes, nor the amounts transferred to, or held in Account No. 2, Reserve for Taxes Account, were included in the amounts distributed or distributable to the taxpayer.

In arriving at the income taxable to the trust and not taxable to the beneficiary, the Revenue Acts of 1928-1932, Section 162 (c)[5] requires that before the net income taxable to the trust is determined, there must first be deducted the amount distributed to the beneficiary and the balance, if any, is taxable to the trust, and if we follow this procedure as set forth in the statute, we find as hereinabove indicated, that after deducting the amount actually distributed to the taxpayer from the amount of the stipulated net income, there is nothing taxable to the trust. The taxpayer on the other hand did not follow the statutory method as just indicated but in computing her taxes for the year 1932 took the sum of $518,343.15, (exclusive of $1223.57 tax for Municipal Bond interest which is included in the Government's computation above) which is the stipulated net income of the trust and deducts therefrom the sum of $147,958.40, the amount held in the Reserve for Taxes Account, for payment of 1933 taxes, which she claims is taxable to the trustee and the balance of $368,186.13 computed after certain adjustments is what she maintains is the amount taxable to her without considering that she actually received the full amount of income as before demonstrated. This we think is the reverse of that prescribed by the statute. It must be remembered that the stipulated net income of the Buildings Trust Fund for 1932 as shown in Plaintiff's Exhibit H of $518,344.15 was arrived at after deducting some $185,000.00 paid by the trustee for all real estate taxes for the year 1932, then to deduct the sum of $147,958.40, which is what is placed in Account No. 2, Reserve for Taxes Account, by transfers from Account No. 1, the Rent Account, during the year 1932 is obviously obtaining a double deduction. This was never the intention of Congress and to merely state the suggestion is to deny it.

The taxpayer relied mainly for the contention she makes, on three cases before the Board of Tax Appeals and one by the Circuit Court of Appeals of the Fifth Circuit, which we feel are in no wise analogous to the case at issue and we shall consider each one separately.

In the case of John D. Rogers, Trustee of the Estate of John D. Rogers, Petitioner, v. Commissioner of Internal Revenue, Respondent, 16 B.T.A. 368, the Testator left a plantation in trust to be operated for the benefit of, and the income therefrom, to be distributed among, several persons, with the mandatory duty on the trustee that "the trustee shall retain out of proceeds of each year's crop sufficient to operate plantation the following year". In two years funds were withheld by the trustee from the operating receipts of the plantation to defray the expenses of the following year's operation, to wit: in 1923, $7,060.13 was withheld and in 1924, $16,647.50 was also withheld. The Board held that both of these amounts in full were taxable to the trustee and therefore not taxable to the beneficiaries. Without in anywise passing judgment on the soundness of the Board's position in the Rogers case, there is a distinct factual difference from the instant case, in that there is a positive direction to the trustee to retain funds necessary for the purposes indicated. In the instant case, the plain duty of the trustee was to distribute the income in accordance with the provisions of Section 6 of the testator's will.

Another case, Jack M. Franks v. Commissioner of Internal Revenue, 32 B.T.A. 260, the petitioner a resident of Chicago, Illinois, was the beneficiary under a trust created by his father in April 1928. Under the terms of the will a trust agreement entered into by three beneficiaries named in the will and the Chicago Title and Trust Company as trustee, the petitioner was entitled to receive a portion of the net income of the trust. The will authorized the four trustees named therein "to determine the mode in which expenses are to be borne as between capital and income * * * to pay off any and all encumbrances against the trust estate * * * as the same mature if, in the judgment of the trustees, it is advisable so to do", (2) "incur and make whatever expenses and outlay they may deem necessary, prudent or expedient for the proper administration of their respective trusts" and "to pay any taxes". In the year 1929 the trustees set aside out

---

[5] Section 162(c): "* * * in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the * * * trust the amount of the income of the * * * trust for its taxable year, which is properly paid or credited during such year to any * * * beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the * * * beneficiary."

of income received from the trust estate the sum of $30,366.59 as an estimated liability for real estate taxes of the trust for the year 1928. These taxes became a lien on the property of the trust estate on April 1, 1928 and the trustees became personally liable on May 1, 1928 for the taxes. Due to a delay in a reassessment the trustees received no bills for the 1928 taxes on the property of the trust until December 31, 1929 and in 1930 the trustees paid $21,185.97 in cash to the Tax Collector of Cooke County for real estate taxes for the year 1928, and the Board held "in the instant proceeding, we are not prepared to say that the trustee did not exercise sound judgment by withholding from the distributable income of the beneficiaries in 1929 a reasonable amount to cover taxes which became a lien on the trust properties on April 1, 1928, and for the payment of which it became personally liable as the holder of the legal title on May 1 of that year". There can be no analogy between this and our case since the trustee received no bills for the 1928 taxes and they were unaware of the exact amount, and took from the 1929 income an estimated amount of the taxes due in 1928 and it was not until sometime in 1930 that they were aware of the exact amount due in 1928 and paid the same. The Board here merely held that the trustees acted within the authority of the trust instrument in withholding from the beneficiary in 1929 "a reasonable amount of the trust income to meet a tax liability which had accrued against the trust properties, and that petitioner had no present right in that year as a beneficiary to receive any portion of the income so withheld." As can be plainly seen this had to do with payment by the trustee of an accrued tax liability and was in conformity with the instrument creating the trust.

In Central Hanover Bank & Trust Company and Chauncey Ford Warner, Co.-Executors, Estate of Horace H. Work, Deceased, Petitioner, v. Commissioner of Internal Revenue, 34 B.T.A. 741, the income of two trusts of which the deceased was a beneficiary had been collected by the trustees between January 1 and March 9, 1933, but had not been paid over to the decedent at the time of his death on March 9th and were held by the trustees to meet anticipated taxes and other expenses payable by the trustees under the trust instrument. The Board here held that the amount in the hands of the trustees was not taxable to the decedent as income to be distributed currently. This like the Franks case, supra, was the withholding from current income by the trustees for the purpose of paying taxes which were then due for the taxable period involved, but could not be paid either because they were not known or they had not as yet been obtained. In addition under the trust instrument in each case the beneficiary was entitled to distribution of net income only after payment of all taxes. It is agreed these amounts withheld were not distributable and therefore not taxable to the beneficiary.

In the case of McCrory v. Commissioner, 5 Cir., 69 F.2d 688, the court was concerned with the right and duty of the trustee to withhold and set aside out of net income of one year an estimated amount to pay gift and income taxes, payable on March 15th of the following year. However, in this case the trustee was under an express direction in the trust instrument to withhold from distribution enough money to pay Federal and State taxes due on the estate of the decedent, whose will created the trust. In addition to being made expressly a charge against the income of the trust, they were due during the year in question, but the amount could not be determined until a later date. So it was held that the amount withheld by the trustee for the payment of the estate taxes was not distributable to the beneficiary and therefore not taxable to it.

In all of these cases the beneficiaries were not entitled to receive income which the trustee withheld to pay taxes which were then due and a charge against the income of the trust for that year; further the withholding in each of the cases as well as the payment of the obligations was not a recurring one as in our case, and in addition in each of them it was stipulated and proved as a fact that the trustees withheld income whereas as has been shown here the income was not withheld but actually distributed currently to the beneficiary.

The next question raised by the appellant is whether the amount of income tax paid by the trustee which should have been paid by the beneficiary of the trust is to be deducted in computing the amount of income distributed to the beneficiary in the year that the income taxes were paid.

It is felt that the determination of the issues heretofore discussed are decisive of this question, since it has been held that the entire income of the trust was

distributable and therefore taxable to the taxpayer. Accordingly, it follows that the income tax should not have been paid by the trustee, but by the taxpayer. Since income taxes are not deductible in computing net income of the trust, the money used by the trustee to pay these taxes would not serve to decrease the taxable income, that is distributable and therefore taxable to the taxpayer.

The third question raised by the appellant is whether the sum of $22,500.00 paid in the year 1931 by the trustee of the Buildings Trust as attorney's fees for services rendered from 1920 to 1928 is deductible as an ordinary and necessary business expense of the trust in computing its net income within the meaning of Section 23(a) of the Revenue Acts of 1928 and 1932, 26 U.S.C.A. Int.Rev.Code § 23(a) (1), and in the event it is not, is the amount paid by the trustee for the attorney fees taxable to the beneficiary? The statute governing deductions for business expenses, Revenue Acts of 1928, 1932 Section 23(a), provides as follows: "In computing net income there shall be allowed as deductions: (a) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered." Here it seems obvious that the attorney's fee was not an ordinary and necessary expense of the trust as the fees paid were in aid of the beneficiary and not of the business of the trust. Dorr v. United States, D.C., 18 F. Supp. 92. This position is further strengthened by the bill rendered since it bears on its face in the taxpayer's own handwriting the notation, "O.K.", signed Helen C. Frick, which certainly is indicative that she considered this her own expense, and it therefore follows that the amount of attorney's fee, paid to the counsel for the trustee, may not be deducted by her in computing her own net income.

The last question for disposition is whether the entire cost for repairing obsolete elevators in the buildings here in question and paid for out of the funds of the Endowment Trust should be allowed to the trustee and the taxpayer.

As heretofore related Section 7 of the testator's will created an Endowment Trust, income and capital of which was to be used for extraordinary repairs, replacements, etc. The amount in controversy (the unrecovered cost) by stipulation covered eight elevators replaced in the year 1931 amounted to $74,668.84 and three elevators in 1932 amounting to $27,063.03. The court below pro-rated the deduction between the taxpayer and the Trustee on the amount of the trust income the court held was taxable to each.

The government contends that no deductions were properly allowable to either the taxpayer or the trustee for the reason that there was no loss to either as provided in the Revenue Acts of 1928 and 1932 Section 23(k), 26 U.S.C.A. Int.Rev. Code § 23(l)[6] since the Endowment Trust bore the entire cost of the replacing of the elevators. It is to be noted however that Section 7 of testator's will provides that the residue of the income not used for the purposes enumerated, to wit: repairs and replacements in every year is to be payable to the taxpayer. Obviously any withdrawal from the Endowment Fund by way of replacement would result in a diminution of income to the plaintiff and it is foreseeable that repeated drains on the fund by way of replacements might work an ultimate exhaustion of the corpus, as a consequence of which there would of necessity be a loss to the plaintiff. The cases cited by the government, particularly Terre Haute Electric Co. v. Commissioner, 7 Cir., 96 F.2d 383, are not in point here because in that instance part of the consideration of the lease entered into, was the return of the property in as good condition as it was when leased and accordingly there was a definite obligation on the lessee to look after depreciation and obsolescence and no loss whatsoever could accrue to the lessor. As pointed out above the taxpayer here

6 Sec. 23(k): "Depreciation. A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each."

sustained a loss in income by withdrawals from the Endowment Fund for replacements since we cannot consider Sections 6 and 7 of the testator's will separately without also considering that the beneficiary in these sections is the same individual, the taxpayer. Accordingly, the thirteenth (13th) conclusion of law of the trial judge is sustained.

The judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judge CLARK participated in the decision of this case.