L. B. WHITFIELD, Jr., and Virginia G. Whitfield, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 19659.

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1962.

Fred S. Ball, Jr., Montgomery, Ala., H. Cecil Kilpatrick, Washington, D. C., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Carolyn R. Just, Attys., Dept. of Justice, Crane C. Hauser, Chief Counsel I.R.S., Charles Owen Johnson, Atty., I.R.S., Washington, D. C., for respondent.

Before RIVES, CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

This petition for review of a decision of the Tax Court [1] presents the question whether that court erred in holding that "under the facts," an indebtedness of the taxpayer's father's estate—he had died in 1942—to a corporation was cancelled in 1956, resulting in distributable income to the estate which was, in turn, taxable to the taxpayer beneficiary in proportion to his beneficial interest in the estate. A second and unrelated question is whether certain income to the estate in 1954, including funds reserved to pay debts of the estate, was taxable to the taxpayer as distributable income.

The facts in the case are not in dispute and are substantially stipulated. Louis Whitfield, Sr. (hereinafter referred to as "the father") organized the Alabama-Georgia Syrup Company ("Alaga") in the early 1900's and, upon his death, owned thirty-two hundred of the outstanding forty-eight hundred shares in the company. He also owed the corporation $331,564.90, which is the subject matter of this dispute. The debt consisted of open accounts and three demand notes executed respectively in 1934, 1936 and 1937.

The father, by will, left most of his estate to trustees, the income to be divided equally between his daughter Katherine and his son Louis, Jr., the taxpayer here.[2] Upon termination of the trust, the corpus was to be divided equally between Katherine and Louis, Jr. The major portion of the father's estate was the thirty-two hundred shares of Alaga stock. There was not sufficient cash to pay the debt owed the corporation, but the corporation filed a claim against the estate in the amount of the debt, creating a lien on the assets of the estate. It is not clear whether the assets of the estate were ever transferred from the executors to the trustees, but both the Commissioner and the taxpayer disregard this, considering the "estate" and the "trust" as the same entity and the executors and the trustees as the same persons.

These fiduciaries were discharged January 30, 1956, and the Tax Court found that "under the circumstances," the debt was cancelled in that year, though it did not point out and we cannot find a specific event upon which the Tax Court based its conclusion. The circumstances were these:

The father's estate owed the corporation $331,564.90, and the assets of the estate were subject to this debt. There was not, and never had been, sufficient cash to pay the debt and the sale of assets of the estate (principally the stock in the corporation) would have involved disastrous tax consequences; so the debt was never paid. It is still carried on the books of Alaga as an asset.

Katherine and her brother Louis, Jr. were "not getting along" and Katherine had begun litigation against Louis. She was dissatisfied with Louis' management of Alaga and wanted "out." Louis' position was that he had either to settle this dispute with his sister or sell his interest in the corporation to some third party.

After several months of arms-length negotiations, both parties being represented by attorneys, a plan to settle the dispute was agreed upon. An Alabama Circuit Court approved the plan and the assets of the estate were distributed and the trustees and executors discharged.[3]

---

1. 36 T.C. 747.
2. Virginia G. Whitfield, his wife, is a party to this petition only because the two filed a joint income tax return. In this opinion, therefore, "taxpayer" or "petitioner" refers only to L. B. Whitfield, Jr.
3. Pertinent parts of its order of Jan. 30, 1956 follow:

   "The said residue consists of three thousand two hundred shares of the corporate stock of * * * Alaga * * * and an amount of cash funds which are not more than sufficient to pay the court costs and expenses of closing the estate, *all of which are subject to an unpaid indebtedness of $331,564.90 which was owing to Alaga by the testator at the time of his death which the estate has never had sufficient funds to pay and none of which has been paid * * *.*

# 642

In accordance with the agreement set out in the decree, Louis took his half of the estate-held shares subject to the entire debt. Alaga redeemed the stock held by Katherine and her sons, in addition to the stock received by Katherine from the estate. As a result, Louis and his immediate family owned all outstanding Alaga stock. The Commissioner recognizes that the settlement made was the result of an arms-length transaction between adverse parties, making no claim that a "sham" is involved.

The redemption price of the stock to Katherine and her sons was book value, but from Katherine's share was deducted one-half the amount of the debt in recognition that her shares held by the estate were subject to that debt. She and her sons received full book value for their unencumbered shares, i. e., those owned by them prior to distribution of the assets of the estate.

The entire debt is still carried on the books of the corporation as an asset, and the corporation has a lien, by Alabama statute, by the State court's decree and by his specific agreement, on Louis' sixteen hundred shares (the book value of which is about twice the amount of the lien). The State court decree ordered that the shares transferred to Louis be subject to the debt, but Louis is not personally liable for the debt. In fact, no one is now, or has been since the father died, personally liable for the debt.

The Tax Court concluded that "upon consideration of all the facts," the debt was cancelled, creating taxable income to the estate, taxable under 26 U.S.C.A. § 662 to the beneficiaries. "In form this indebtedness was not cancelled; in substance, it was." Thus, the court concluded, Louis then received taxable income in the amount of half of the debt. We do not agree. There is no controversy over the "facts;" there is involved only the ultimate question of whether or not there was a tax-recognizable cancellation of the indebtedness in 1956. This, of course, is a question of law—a legal conclusion to be drawn from undisputed facts. The reasoning upon which the Tax Court based its conclusion is that, inasmuch as one-half of the debt to the corporation was deducted from the purchase price paid taxpayer's sister Katherine for her stock received from the estate or trust, "the treatment of this indebtedness as not representing a true asset of Alaga by all interested parties was, in substance, an agreement by Alaga through its stock holders to cancel the indebtedness."

This is, in our opinion, an unwarranted legal conclusion. Assuming this is a proper situation in which to "pierce the corporate veil" and, looking through form to substance, to discover the economic effect of the transactions, the Tax Court's reasoning falls of its own weight. Based on its premise that "cancellation" depends on the treating of the asset as "not * * * a true asset," it must follow that there was no "true debt." If this were so, there could be no "constructive cancellation."

Assuming that the stockholders' attitude toward the debt is relevant, however, it is clear to us that the debt was treated by everyone as a "true asset." The debt was taken into consideration in computing the price per share to be paid Katherine and her children for stock owned by them prior to distribution of the shares held by the estate; the State court recognized it as existing and a lien on the stock of Alaga; and Louis formal-

"* * * Since the said residue cannot be distributed without the payment of the said indebtedness to Alaga and the estate does not have funds with which to pay said indebtedness or any prospect thereof, Katherine and her two sons have submitted a written proposal * * * [here follows the computation of the amounts to be paid Katherine and her sons in redemption of their stock].

"Louis is willing to accept in full settlement of his share of the residue the remaining assets of the estate subject to the administration expenses, the indebtedness of the estate, and is willing to deposit * * *" etc. [Emphasis supplied.]

ly acknowledged it. The Tax Court found, and the Commissioner admits, that there has been no formal cancellation of the debt.[4]

■ Tax consequences depend on some economic benefit[5] to the estate, and thus to the taxpayer, as a result of the events under consideration. It is not enough to say, as the Commissioner does, that the "grantor [father], and after his death his estate, were enriched to the extent of the amount of the debt, which he had taken out of the corporation and had never repaid." This is putting the cart before the horse. There was a constructive cancellation amounting to a dividend[6] only if there were some legally recognized benefit to the estate in that year, and that is the question before us. It may well be that, if there were such a constructive dividend to the estate in 1956, taxpayer received taxable income in that year as to his share of that enrichment. But the enrichment must arise from a cancellation of the debt, not a receipt of the money by the father prior to his death fourteen years before. For, if the latter were the test, the tax was due when the debt was incurred—and that is certainly not the position taken by the Commissioner.

An analysis of the undisputed facts shows that nothing happened in 1956 which put the estate, and thus the taxpayer, in any better position than it had been in 1955 or any other time prior to the alleged "constructive cancellation." The Commissioner makes much of the contention that, after the events complained of in 1956, there is no one to enforce payment of the debt. Assuming this is true, it is no more true than it was before 1956. In 1955, or at any time prior to the events under consideration, the taxpayer and his sister and their families owned, directly or beneficially, all the stock of Alaga, thirty-two hundred shares being subject to the $331,000 debt. After 1956, taxpayer and his family owned all the stock, the sixteen hundred shares being subject to the entire debt (the book value of sixteen hundred shares is about twice the amount of the lien). In addition, Katherine is now a major creditor of Alaga (a large portion of the redemption price of her stock is represented by Alaga's notes to her) and it would be to her interest to see that it is paid.

■ It is plain, therefore, that there was nothing in the record before the Tax Court to support the conclusion that there had been a cancellation of the debt of the estate to Alaga, constructive or otherwise. And, if there had been such proof, such a cancellation would not supply the basis for taxation as a dividend because the proof further established without dispute that there had been no benefit or enrichment either of the estate or the taxpayer.

We conclude, therefore, that the Tax Court erred in holding that one-half of the amount of the $331,564.90 debt was distributed to taxpayer in 1956 out of the corpus of the estate and that said amount or any amount was taxable to him under the provisions of § 662(a) (2) of the Internal Revenue Code of 1954.

The second point for our consideration is the 1954 assessment consisting, for the most part, of taxation to the petitioner as income certain funds retained by the estate to pay expenses in the next year.

---

4. All of the cases cited by the Tax Court or relied on by Respondent involve actual cancellations. We have examined them and find them inapplicable to the undisputed facts of the case before us.

5. "It is the command over property and the enjoyment of its economic benefits which are recognized as a proper basis for taxation." Davis v. United States, 6 Cir., 1955, 226 F.2d 331, 335, citing Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L. Ed. 1439, and Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75.

6. "Corporate earnings may constitute a dividend notwithstanding that the formalities of a dividend declaration are not observed * * *." Paramount-Richards Theatres, Inc. v. Commissioner, 1946, 5 Cir., 153 F.2d 602, 604.

The Tax Court held that the $4,926.69 retained by the estate was taxable to the beneficiaries because "[t]here is no evidence to show that any reserve for expenses which would not be due until the next year was necessary or proper * * *. Cf. Frick v. Driscoll, 3 Cir., 1942, 129 F.2d 148." This holding is, in our opinion, erroneous.

■■■. The will here provided that "my trustee shall estimate and set up adequate reserves each year to cover estimated expenses * * *." The Frick case cited by the Tax Court held that reserves set up by the trust were taxable to the beneficiary rather than to the trust, because the trust instrument did *not* require the withholding of the funds or give the fiduciary a discretionary power to withhold the funds. This is not the case here; the will expressly requires the reserve. As said in Frick, "it is well settled that the question of whether trust income is distributable or not depends upon the trust instrument, Frueler [Freuler] v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; * * *." Our case of McCrory v. Commissioner, 5 Cir., 1934, 69 F.2d 688, is in point. Funds withheld by the trustee under directions in the instrument were not taxable to the beneficiaries, but to the trustee.

We need not belabor the point. A reading of the statutes [7] relating to the taxation of trust and estate income clearly indicates that income is taxable to the beneficiary if it is distributable to him and to the fiduciary if it is not. We do not agree with the Government's argument that the taxpayer was not consistent in his accounting methods. Both the fiduciary and the taxpayer reported income on a cash basis. The reserve was not deducted on the fiduciary return (according to taxpayer's brief and not denied); it was included therein and taxes were paid on it. The beneficiary's "accounting methods" are not involved if the contested item was not income to him. The reserved funds were taxed in the year received, but attributed to the fiduciary. This is a proper application of cash basis reporting.

The judgment of the Tax Court assessing deficiencies for the years 1954 and 1956 is, therefore, reversed, the erroneous determinations for those years are set aside and the case is remanded to the Tax Court for the entry of a judgment consistent with this opinion.

Reversed and remanded.

---

7. 26 U.S.C.A. § 661. "Deduction for estates and trusts accumulating income or distributing corpus.

"(a) Deduction.—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—

"(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year) ; and

"(2) any other amounts properly paid or credited or required to be distributed for such taxable year; but such deduction shall not exceed the distributable net income of the estate or trust."

26 U.S.C.A. § 662. "Inclusion of amounts in gross income of beneficiaries of estates and trusts accumulating income or distributing corpus.

"(a) Inclusion.—Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:

"(1) Amounts required to be distributed currently * * *.

"(2) Other amounts distributed. All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. * * *"