184

G. M. Standifer Construction Corporation, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 51636.    Promulgated March 27, 1934.

*Charles E. McCulloch, Esq.*, for the petitioner.
*Warren F. Wattles, Esq.*, for the respondent.

OPINION.

Arundell: The respondent determined deficiencies in petitioner's income tax for 1928 in the amount of $8,605.20. The deficiency arises from respondent's disallowance of a portion of the net loss claimed to have been sustained in 1927. The facts were stipulated and we adopt, by reference, the stipulation as our findings of fact.

The question for decision is whether the following items, as they are designated in the stipulation, constituted income for the year 1927:

| | |
|---|---:|
| Unpaid increased wages, Contract 10 | $22,957.41 |
| Unpaid increased wages, wooden yard | 3,993.68 |
| Vouchers payable account | 36,992.05 |
| Total | 63,943.14 |

The two items of "unpaid increased wages" will be considered together. These items are made up of amounts of increased wages granted petitioner's employees in 1920 when petitioner was engaged in the construction of vessels under private contracts. It had previously constructed vessels for the United States Shipping Board Emergency Fleet Corporation. Some of the increased wages here involved were retroactive to 1919, but the total amount was used to reduce petitioner's gross income for 1920 either as cost of construction or as expenses, with the possible exception of two items, $70.64 and $5.28, which accrued in 1921, and these according to the stipulation

"may have been taken as expenses in 1921." No checks were ever made out for the unpaid increased wages. There was no controversy as to the amounts of the increased wages; they were not paid because the employees never called for them. Only three payments were made after 1922—two in 1923, totaling $37.18, and one in April 1924, in the amount of $14.40. All of the unclaimed wage items here involved were for work performed wholly in the State of Washington.

The other item, "Vouchers payable account, $36,992.05," represents a credit balance in that account after petitioner's settlement of a claim by the Pacific Marine Iron Works. In 1918 the Iron Works engaged to construct marine engines for petitioner. Various controversies arose with respect to the contract, the Iron Works making claims for changes and extras, for suspension and cancellation, and for increased wages ordered by a labor board. In 1921 the Iron Works sued petitioner for $48,156.50. Sometime prior to 1924 petitioner credited the amount of $48,156.50 to its vouchers payable account. On November 5, 1924, petitioner paid the Iron Works $11,164.45 in settlement of its claims, and thereupon charged that amount to its vouchers payable account, leaving a balance therein of $36,943.14.

The vouchers payable account was an account to which petitioner credited from time to time various sums representing liabilities incurred in connection with its ship-building operations, but not yet paid. Most of the credits to that account were charged to income, but it is not definitely known and is not now ascertainable whether or not any charge was made to income and taken as a deduction in previous years on account of the Pacific Marine Iron Works item.

Petitioner has not been engaged in any construction work since 1921. In June 1927 it paid to the collector of internal revenue the final balance of taxes owing to the United States for the years 1918 to 1922, inclusive, as determined by this Board (4 B.T.A. 525) and submitted an offer in compromise of interest, which was accepted on March 20, 1928. In 1927 it distributed to its stockholders $146,000, which amount was credited to an account designated "Advances to Stockholders."

On July 2, 1927, petitioner filed a certificate of dissolution with the Corporation Commissioner of the State of Oregon, and that official on the same date issued his certificate dissolving the corporation. Under Oregon law a corporation remains in existence for five years after issuance of certificate of dissolution, for the purpose of winding up its affairs.

Petitioner's books of account were kept and its returns filed for all years on the accrual basis. At the close of 1927 its liability ac-

counts contained the items here in dispute, aggregating $63,943.14, which amount respondent added to income for that year, thus determining a net income instead of a net loss as claimed by petitioner.

The question concerning the inclusion in income of unclaimed wages is controlled by the decisions in *Chicago, Rock Island & Pacific Ry. Co.*, 13 B.T.A. 988; affirmed on this point, 47 Fed. (2d) 990; and *Charleston & Western Carolina Ry. Co.*, 17 B.T.A. 569; affd., 50 Fed. (2d) 342. In the first case cited amounts deducted for wages and remaining unclaimed for two years were credited to profit and loss, and in the other case unclaimed wages due employees for 1921 were credited to profit and loss in December 1924. In both cases it was held that the amounts thus restored to profit and loss were to be included in income for the year in which the restoration was made. No valid distinction can be taken between those cases and the present one on the ground that this petitioner failed to enter the items in an income account. Bookkeeping entries do not make income, but neither does a failure to record an item as income permit it to escape taxation when the time arrives that it represents income. In our opinion the proper time for inclusion in this case was the year 1927, when petitioner filed its certificate of dissolution and distributed a substantial portion of its assets to its stockholders. It is stipulated that at the beginning of 1927 petitioner's assets were $428,086.75 and liabilities less than $200,000, while at the end of the year its assets amounted to but $44,533.99 and liabilities $155,073.15, including items making up the $63,943.14 involved here. It was thus obviously engaged in the liquidation of its affairs in that year, and a fund previously held as impressed with an obligation and becoming in that year available for other uses is properly an item of income.

Petitioner argues that if the unclaimed wages were income to it in any year it was when the statute of limitations ran against them. The applicable statute, says petitioner, was that of the State of Washington, which provides a three-year period for commencement of actions on contracts not in writing. We think this has no bearing on the question before us. Local statutes are not decisive of what constitutes income, *Burnet* v. *Harmel*, 287 U.S. 103, nor what deductions may be taken, *Weiss* v. *Wiener*, 279 U.S. 333. We are of course bound to follow established state rules of property, *Warburton* v. *White*, 176 U.S. 484, but there is no property right in a statute of limitations which affects the remedy alone and not the obligation. *Campbell* v. *Holt*, 115 U.S. 620. So it has been held that local statutes of limitations barring collection of debts are not sufficient to constitute ascertainment of worthlessness. *Leo Stein*, 4 B.T.A. 1016; *Ralph H. Cross*, 20 B.T.A. 929; affd., 54 Fed. (2d) 781.

We accordingly hold that it was proper to include the unclaimed wage items in petitioner's income for 1927.

The other item, growing out of the litigation with the Pacific Marine Iron Works, is somewhat different from the unclaimed wage items. This item was in substance a reserve, and, if allowable as a deduction at the time set up, the balance remaining in it after settlement of the claim which prompted its creation was income in the year of settlement, 1924. Unexpended balances in reserve accounts are income " in the year in which the reason for which they were created ceased to exist." *Peabody Coal Co.*, 18 B.T.A. 1081. We further held in the *Peabody Coal Co.* case that reserves of a kind that are not recognized as constituting allowable deductions should be restored to income in the year in which they were set up. Consequently, whether the vouchers payable account was a correct account or an erroneous account, the amount remaining unexpended at the close of 1924 was income in that or a prior year rather than the year 1927 as held by the respondent.

The theory underlying the restoration of reserve balances to income, like that of recoveries on losses for prior years (*Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359) and collections on debts previously deducted as worthless (*Askin & Marine Co.*, 26 B.T.A. 409; affd., 66 Fed. (2d) 776), is that by taking the deductions in the earlier years the taxpayer benefited through a reduction of its taxable income, and subsequent events demonstrate that there was in fact no loss, even though honest belief so indicated at the time. In this case it is at least doubtful whether petitioner had the benefit of a deduction of the Iron Works item in any prior year. As stated above, the item was in substance a reserve, and as it was set up to cover a contingent liability the respondent in all probability would not allow it either as an item of cost of goods sold or as an expense deduction. Since the closing of petitioner's tax liability for earlier years its books have been destroyed. But prior to such destruction, according to the stipulation, petitioner's returns and books of account were the subject of many months of investigation in the field and also in the respondent's office at Washington; that as a result of three or four months of field work a revenue agent's report of more than 400 pages was prepared; that petitioner and respondent were in controversy for several years over the taxes for the years 1918 to 1922, inclusive. Deficiencies proposed by the respondent were litigated before this Board. It is highly improbable that throughout these investigations, controversies, and litigation the Iron Works item, if claimed as a deduction by petitioner, would escape the notice of the respondent. The probabilities are the other way. Had the item been used by petitioner to reduce gross income

it would have been detected somewhere along the line and challenged by the respondent and there would be a record of it available to and capable of production by the respondent.

It is accordingly our view that from whatever angle the Pacific Marine Iron Works item is considered, it was improper to restore the unexpended balance to 1927 income.

*Decision will be entered und., r Rule 50.*