**BEAR MANUFACTURING COMPANY,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 18221.**

United States Court of Appeals,
Seventh Circuit.

July 30, 1970.

Rehearing Denied Aug. 25, 1970.

Edward Keefe, Samuel M. Gilman, Coyle, Gilman & Keefe, Rock Island, Ill., for plaintiff-appellant.

Frank J. Violanti, U. S. Atty., Springfield, Ill., Johnnie M. Walters, Asst. Atty. Gen., Stephen Schwarz, Lee A. Jackson, Bennet N. Hollander, Attys., Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before SWYGERT, Chief Judge, MURRAH, Senior Circuit Judge,[1] and CAMPBELL, Senior District Judge.

MURRAH, Senior Circuit Judge.

In this appeal from the trial court's adverse determination of Bear's income tax refund claim, we must apply to unique facts the general rule that items deducted from gross income in one year are taxable income in the year of their recovery. Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S. Ct. 271, 91 L.Ed. 296 (1946); Alice Phelan Sullivan Corp. v. United States, 381 F.2d 399, 180 Ct.Cl. 659 (1967); Estate of William H. Block, 39 B.T.A. 338, aff'd sub nom. Union Trust Co. of Indianapolis v. Comm'r of Internal Revenue, 111 F.2d 60 (7th Cir. 1940).[2] The parties are agreed that certain accrued royalty expenses, deducted from income in prior years but never paid, must be returned to Bear's income in some taxable year. The question is whether the Commissioner correctly determined that the money was recovered and realized as income in 1962 when Bear transferred the money to surplus on its books.

In 1937 Bear Manufacturing Company, an accrual basis taxpayer engaged in the manufacture of automotive testing equipment, agreed to pay royalties to General Motors for the use of certain patents in the manufacture of its products. A dispute as to the amount of royalties due General Motors arose in 1938 and Bear refused to make further payments. But in order to protect itself from what it then regarded as certain liability, Bear set off an accrued royalty expense against its income for the years 1939 through 1948 which aggregated $129,889.66.

In 1949 the Commissioner, determining that the royalty liability was "too uncertain, contingent and remote to represent a true liability," disallowed a further deduction but made no attempt to include the amount of the previous deductions in Bear's income.[3] None of the money was ever paid to General Motors and until 1963 Bear carried the $129,889.66 on its books and financial statements as a liability. In that year, on the advice of its accountant, Bear transferred the money to surplus as of the end of 1962, but did not report it as income for either 1962 or 1963.

In 1964 the Commissioner determined that the allocation to surplus was income in 1962 and assessed additional taxes of $67,542.62. Bear paid the assessment and, after the Commissioner disallowed its claim for refund, brought this action in the District Court under 28 U.S.C. § 1346(a) (1). The argument was that the income was realized sometime prior to 1962 and certainly no later than 1959. This argument was based upon the postulate that a new cause of action accrued to General Motors each year from 1937 through 1948; that the local statute of limitations, Ill.Rev.Stat., C. 83, § 17, barred the last cause of action no later than 1959;[4] and that in that year the

---

1. Senior Circuit Judge Murrah of the United States Court of Appeals for the Tenth Circuit is sitting by designation.

2. In our case all of the deductions resulted in tax benefit and no problem is raised under § 111 of the Internal Revenue Code of 1954.

3. The Commissioner's determination was made in a 1952 examination of Bear's 1949 return. Bear eliminated the deductions for the years 1949 through 1951 and paid a deficiency assessment for each year. The disallowance of royalty expense deductions after 1948 was based on a determination that after ten years of inaction by General Motors no new liability arose from Bear's 1949 manufacture of products allegedly incorporating General Motors patents. There is no indication that, as Bear contends, the Commissioner intended to reverse his allowance of the earlier deductions as legitimate. The Commissioner has consistently treated the deductions in question as proper in the year taken and no question is now raised in that regard. *Cf.* Northwestern States Portland Cement Co. v. Huston, 126 F.2d 196 (8th Cir. 1942); Studebaker Packard Corp. v. United States, 8 Am.Fed.Tax R. 2d 5058 (N.D.Ind.1961).

4. The parties apparently agree that Illinois law, including its statute of limitations,

right to the money as income was established and income was, therefore, realized under principles of accrual accounting.[5]

Rejecting this basic argument, the District Court concluded that Bear's 1962 bookkeeping entry marked the point at which the liability terminated as a practical matter and the money became available for general use in Bear's business. In arriving at this conclusion, the court agreed with the Commissioner that the local statute of limitations was not controlling on these facts.

■ We think the District Court's decision is supported by the case law and by common sense. The parties agree that a previously deducted liability expense is "recovered" and income realized when the liability terminates as a practical matter. The taxpayer's disregard of the liability and use of the money for his own purposes is the factor usually relied on as indicative of such a termination. Wichita Coca Cola Bottling Co. v. United States, 152 F.2d 6 (5th Cir. 1945); Boston Consol. Gas Co. v. Comm'r of Internal Revenue, 128 F.2d 473 (1st Cir. 1942); Charleston & W. C. Ry. Co. v. Burnet, 60 App.D.C. 192, 50 F.2d 342 (1931); Chicago, R. I. & Pac. Ry. Co. v. Comm'r of Internal Revenue, 47 F.2d 990 (7th Cir. 1931); Lime Cola Co., 22 T.C. 593 (1954). This is so even where the taxpayer's exercise of control over the money precedes the running of the statute of limitations governing recovery of the liability. Roxy Custom Clothes Corp. v. United States, 171 F. Supp. 851, 145 Ct.Cl. 602 (1959); Fidelity Phila. Trust Co., 23 T.C. 527 (1954).

Bear agrees with this case law, but argues that the accrual accounting system requires a different result where the statute of limitations runs before the accrual basis taxpayer uses the money for his own purposes. We disagree. The expiration of the period in which actions may be brought to recover the unpaid expenses from the taxpayer does not necessarily mark the practical termination of that liability. G. M. Standifer Constr. Co., 30 B.T.A. 184 (1934). A taxpayer may choose, for credit purposes or other sound business reasons, to acknowledge and pay a liability after the statute of limitations has run. The point at which the liability first terminated must be determined on the particular facts of each case and, as the District Court properly concluded, the local statute of limitations is not necessarily controlling on that question. Roxy Custom Clothes Corp. v. United States, *supra*; Policy Holders Agency, Inc., 41 T. C. 44 (1963); *Fidelity Phila. Trust Co.*, *supra*; *G. M. Standifer Constr. Co.*, *supra*.

■ Applying these principles to the present case, we agree with the District Court that the Commissioner correctly determined that the liability did not terminate as a practical matter until 1962. Unlike the taxpayer in *Policy Holders Agency, Inc.*, *supra*, Bear apparently had no prior experience with liabilities of this sort which might indicate a different termination for practical purposes. And, despite Bear's contentions to the contrary, there is no indication that it believed the local statute of limitations had terminated its liability and freed the money prior to 1962. All the record shows is that Bear decided not to settle with General Motors, hoping that General Motors might sleep on its rights and be barred from recovery by the statute of limitations at some indeterminate time in the future.

Although bookkeeping entries are not necessarily determinative of income tax liability, Doyle v. Mitchell Bros. Co., 247

applied to questions of enforceability of the Bear-General Motors agreement. William J. Lemp Brewing Co. v. Ems Brewing Co., 164 F.2d 290 (7th Cir. 1948); Ryan v. Napier, 252 F.Supp. 730 (N.D. Ill.1966).

5. Since the Commissioner made no assessment against Bear until 1964, the year 1959 is closed to assessment by the Commissioner, 26 U.S.C. § 6501. And see 26 U.S.C. §§ 1311(b) (1), (b) (2) (A), 1312(3) (B); 2 J. Mertens, Federal Income Taxation § 14.08 (1969).

U.S. 179, 187, 38 S.Ct. 467, 62 L.Ed. 1054 (1918); Northwestern States Portland Cement Co. v. Huston, *supra*; Comm'r of Internal Revenue v. North Jersey Title Ins. Co., 79 F.2d 492 (3d Cir. 1935); *Policy Holders Agency, Inc., supra*, the 1962 transfer to surplus in this case represented a taxable event. Cf. Pittsburgh Industrial Engineering Co., 9 CCH Tax Ct. Mem. 1132 (1950) (where the income was admittedly realized prior to the 1942 bookkeeping transfer). With that transfer the liability terminated for all practical purposes and the money became available for general use in Bear's business. Bear has clearly failed to meet its burden of proving the Commissioner's determination erroneous and we affirm the District Court's judgment. See North American Coal Corp. v. Comm'r of Internal Revenue, 32 B.T.A. 535 (1935), aff'd 97 F.2d 325 (6th Cir. 1938).