ESTATE OF EMELIL BANKHEAD, DECEASED, W. W. BANKHEAD, EXECUTOR AND W. W. BANKHEAD, SURVIVING SPOUSE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3177–71.   Filed July 9, 1973.

*Morris W. Savage*, for the petitioners.
*J. Leon Fetzer*, for the respondent.

---

STERRETT, *Judge:* The respondent determined a deficiency in the petitioners' Federal income tax for the calendar year 1965 in the amount of $18,891.47. The issues for our determination are:

(1) Whether the petitioners received income in the amount of $40,550 on a cancellation of indebtedness in that amount owed by Emelil Bankhead to Bankhead Broadcasting Co., Inc., within the meaning of section 61(a)(12), I.R.C. 1954.[1] And, if so,

(2) Whether a deficiency can be assessed for the calendar year 1965 under the provisions of section 6501(e).

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner Emelil C. Bankhead (hereinafter the deceased) was a resident of Jasper, Ala., at the time of her death on February 24, 1965. She was survived by her husband, W. W. Bankhead (hereinafter Bankhead), who was appointed executor of her estate and is also a petitioner herein. Bankhead's legal residence at the time of the filing of the petition herein was Jasper, Ala.

Bankhead and the deceased filed a joint Federal income tax return for the calendar year 1965 with the district director of internal revenue at Birmingham, Ala.

Bankhead Broadcasting Co., Inc. (hereinafter referred to as the corporation), was incorporated on October 21, 1946. Its business was that of operating, initially one and subsequently three, radio stations. It has been owned by the following shareholders, holding the following number of shares, during the indicated periods of time:

| Stockholder | 10/21/46– 8/15/56 | 8/15/56– 9/1/64 | 9/1/64– 5/17/65 | After 5/17/65 |
|---|---|---|---|---|
| W. W. Bankhead | 248 | 201 | 145 | 202 |
| Emelil C. Bankhead | 1 | 1 | 57 | |
| James E. Reese | 1 | | | |
| Children of W. W. and Emelil C. Bankhead | | 48 | 48 | 48 |
| | 250 | 250 | 250 | 250 |

During her life, the deceased maintained a running loan account with the corporation. The books of the corporation reflect that loans were made to the deceased as follows:

| Date | Amount | Date | Amount |
|---|---|---|---|
| Aug. 6, 1956 | $4,150 | Mar. 11, 1963 | $10,000 |
| Jan. 8, 1960 | 8,000 | Aug. 21, 1963 | 1,600 |
| Aug. 2, 1960 | 16,000 | Sept. 29, 1964 | 1,500 |
| Sept. 5, 1962 | 800 | | |
| Jan. 31, 1963 | 3,000 | | 45,050 |

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

The loans of August 6, 1956, August 21, 1963, and September 29, 1964, were evidenced by fully executed notes signed by the deceased. The remaining loans were evidenced by unsigned notes. The notes did not call for the payment of any prescribed interest rate, nor was any interest in fact ever paid on any of the notes. However, the deceased fully intended to repay the entire principal amounts due. The loans were made with the knowledge of other shareholders and officers of the corporation.

The deceased repaid a total of $4,500 on her indebtedness to the corporation prior to her death. The repayments were as follows:

| Date | Amount |
|---|---|
| Mar. 9, 1963 | $3,000 |
| Oct. 21, 1964 | 1,500 |
| | 4,500 |

The loans made to the deceased were carried on the books and financial statements of the corporation as notes receivable. The corporation secured a loan from a lending institution on the basis of its financial statements, which included the notes receivable as an asset.

The balance due on the death of the deceased was $40,550. Some of the proceeds of the loans were used by the deceased to purchase stocks many of which were included in her gross estate.

Bankhead was appointed executor of the deceased's estate on March 4, 1965. Letters testamentary were issued to him on that date. Under the will of the deceased, Bankhead was the sole beneficiary.

The deceased's estate was valued at over $300,000 on its Federal income tax return. Bankhead, as sole beneficiary, received over $200,000.

Through the inadvertence of Bankhead, the corporation did not file a claim against the estate in the probate court although it was the intention of Bankhead to repay the loans in full.

Ala. Code tit. 61, secs. 210 and 211 state:

Sec. 210. (5814) (2589) (129) Representatives having claim against estate must file same in probate court, verified by affidavit.—All claims against the estate of a decedent, held by the personal representative of such decedent or by an assignee, or transferee of such representative, or in which he has an interest, whether due or to become due, must be presented within six months after the grant of letters by filing the claims, or statement thereof, verified by affidavit, in the office of the judge of probate, in all respects as provided by section 214 of this title. All such claims not so presented and filed are forever barred, and the payment or allowance thereof is prohibited. But this section shall not apply to claims of executors or administrators to compensation for their services as such, nor to sums properly disbursed by them in the course of administration. (1931, p. 839.)

Sec. 211. (5815) (2590) (130) (2081) (2597) (2239) (1883) All other claims to be presented, or they are barred.—All claims against the estate of a decedent,

other than the claims referred to in the preceding section, whether due or to become due, must be presented within six months after the grant of letters testamentary or of administration; and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited. Such presentation must be made by filing a verified claim or verified statement thereof in the office of the judge of probate of the county in which the letters are granted; but claims which have not been filed and which are liens against the real or personal property of the decedent may be paid by the personal representative to protect the assets of the state. (1931, p. 840.)

When the estate tax return of the deceased was filed, the $40,550 was not deducted as a claim against the estate. The loans of the deceased were carried on the books of the corporation until August 31, 1968.

The corporation had sufficient earnings and profits during the year 1965 to pay a dividend in the amount of the deceased's indebtedness.

Petitioners' income tax return for the year in issue contained the following amounts of gross income:

| | |
|---|---:|
| Wages, salaries, etc. | $17,857.20 |
| Dividends | 3,654.16 |
| Interest | 660.58 |
| Partnership income: | |
|   Bankhead, Petree & Savage | |
|   Gross receipts $62,510.31 | |
|   Bankhead's interest 10% | |
| Bankhead's share of partnership gross receipts | 6,246.03 |
| Bankhead-Long Building | |
|   Gross receipts $16,030.84 | |
|   Bankhead's interest 39.506% | |
| Bankhead's share of partnership gross receipts | 6,332.18 |
| Rental income | 4,108.33 |
| Gross receipts from business or profession | 190.00 |
| Sale or exchange of property | 29,692.72 |
| Gross income stated in return | 68,741.20 |

The notice of deficiency in the instant case was mailed to the petitioners on February 11, 1971. The petitioners' Federal income tax return did not indicate in any way the $40,550 in dispute herein.

### OPINION

The first issue for our determination is whether the petitioners realized income within the meaning of section 61(a)(12)[2] in the amount of $40,550 on a cancellation of indebtedness in that amount

---

[2] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

     *        *        *        *        *        *        *

(12) Income from discharge of indebtedness;

owed by the deceased, Emelil Bankhead, to Bankhead Broadcasting Co., Inc.

Between August 6, 1956, and September 29, 1964, the deceased borrowed money from the corporation which she owned with her husband and children.[3] After her death, the corporation failed to file a claim against her estate with the probate court.

Ala. Code tit. 61, sec. 211 (1960) states:

Sec. 211. (5815) (2590) (130) (2081) (2597) (2239) (1883). All other *claims to be presented, or they are barred.*—All claims against the estate of a decedent, other than the claims referred to in the preceding section, whether due or to become due, *must be presented within six months* after the grant of letters testamentary or of administration; and *if not presented within that time*, they are forever barred and the *payment* or allowance thereof *is prohibited*. Such presentation must be made by filing a verified claim or verified statement thereof in the office of the judge of probate of the county in which the letters are granted; but claims which have not been filed and which are liens against the real or personal property of the decedent may be paid by the personal representative to protect the assets of the state. (1931, p. 840.) [Emphasis supplied.]

The point at which a liability terminates must be determined on the particular facts of each case. *Bear Manufacturing Co.* v. *United States*, 430 F. 2d 152 (C.A. 7, 1970) ; *Policy Holders Agency, Inc.*, 41 T.C. 44 (1963).

Ala. Code tit. 61, sec. 211 (1960), not only provided the estate with a complete defense to any suit on the various loans, but affirmatively forbade any voluntary payment by the executor. Because no claim was asserted by the corporation in probate court, we find little difficulty in finding that if the debts were then viable, they were extinguished by operation of law on September 4, 1965, 6 months after the grant of letters testamentary to Bankhead. Cf. *Smyth* v. *Barneson*, 181 F. 2d 143 (C.A. 9, 1950). Moreover, Bankhead did not argue that the estate still intended to pay the debts, even though collection was unenforceable, after learning the nature of the above-mentioned statute. We can think of few situations where the extinguishment of indebtedness is more definite and effective.

The next question we are faced with is whether any of the debts were extinguished prior to the year in issue. Petitioners admit that there was no voluntary termination of any debts by the corporation and both the corporation and the deceased fully expected repayment of the loans. The comments of the court in *Securities Co.* v. *United States*, 85 F. Supp. 532 (S.D. N.Y. 1948), may be quoted here as being equally applicable to the facts at bar:

the creditor did not perform any act of cancellation, nor gratuitously or otherwise forgive or affirmatively release the debts. He merely failed to act within the statutory period and thereby made available to the debtor a defense. * * *

---

[3] James E. Reese terminated his ownership on Aug. 15, 1956.

Further, the deceased never included any of the loans in her gross income.

However the petitioners argue that the loans made on January 8, 1960, August 2, 1960, and September 5, 1962, were evidenced by unsigned notes and therefore were subject to a 3-year statute of limitations on open or unliquidated accounts. Ala. Code tit. 7, sec. 24 (1960).[4] We disagree. A contract which is definite in all its terms and leaves nothing for future adjustment is not an "open" account within the meaning of the aforementioned statute, whether written or oral. *Union Naval Stores Co.* v. *Patterson*, 179 Ala. 525 (1912) ; *Hays Cooperage Co.* v. *Louisville & Nashville R. Co.*, 18 Ala. App. 18 (1920). We think the loans were fixed in both terms and amount and were therefore not "open" as contemplated by the statute. Rather we feel the loans were subject to a 6-year statute of limitations in effect for "Actions for the recovery of money upon a loan, upon a stated or liquidated account." Ala. Code tit. 7, sec. 21 (1960). The period of limitations is computed from the date a demand obligation is created. *Brown* v. *First National Bank of Montgomery*, 261 Ala. 565 (1954). Since that period had not expired in respect of the loans of January 8, 1960, August 2, 1960, and September 5, 1962, all the deceased's liabilities were thus extinguished under Ala. Code tit. 61, sec. 211 (1960).

Whether the prohibition of Alabama law against repayment of the amounts in issue is correctly referred to as an extinguishment of the indebtedness or as something else, the debtor is equally enriched by the abolition of a duty to repay money he has previously received and had the unlimited use of. It is this undeniable economic benefit that creates income for purposes of the Internal Revenue Code under circumstances such as those here present. Here the estate was enlarged by the obviation of the need to repay the debts in issue and hence its sole beneficiary, Bankhead, received a larger estate than he otherwise would have been entitled to.

Consequently, we hold that the Estate of Emelil Bankhead realized $40,550 in ordinary income during the calendar year 1965 on the cancellation, by act of law, of her indebtedness to the corporation.[5]

---

[4] Sec. 24. (8947) (4838) (2799) (2618) (3229) (2904) (2480) Limitation of three years.—The following must be commenced within three years :

Actions to recover money due by open or unliquidated account, the time to be computed from the date of the last item of the account, or from the time when, by contract or usage, the account is due.

Proceedings in any court of this state to disbar any attorney, authorized to practice law in this state. (1915, p. 928.)

[5] After the initial rejection of Bankhead's request that the claims of the corporation be allowed as a deduction from the deceased's gross estate, Bankhead testified that the corporation claimed it was entitled to a bad debt deduction since the debt was extinguished (according to the Internal Revenue Service). This claim was also disallowed. Unless this action was based on the theory that the cancellation amounted to a constructive dividend, we fail to understand the basis for the Service's conclusion since repayment was absolutely prohibited by Alabama law.

*Commissioner* v. *Jacobson*, 336 U.S. 28 (1949) ; *United States* v. *Kirby Lumber Co.*, 284 U.S. 1 (1931).

The second issue to be decided is whether the deficiency in the instant case is barred from assessment. The $40,550 income from the discharge of indebtedness was not included or disclosed on the petitioners' tax return for the calendar year 1965. The petitioners' tax return showed gross income of $68,741.20. Since more than 25 percent of the gross income stated in the return was omitted, the period for assessment is extended to 6 years from the time prescribed for filing.[6] Sec. 6501(e)(1). The petitioners' return for 1965 was due to be filed on April 15, 1966. The notice of deficiency was mailed on February 11, 1971, well within the 6-year period fixed by section 6501 (e). We therefore hold that assessment of the deficiency herein is not barred.

*Decision will be entered for the respondent.*

---

[6] SEC. 6501(e). SUBSTANTIAL OMISSION OF ITEMS.—Except as otherwise provided in subsection (c)—
    (1) INCOME TAXES.—In the case of any tax imposed by subtitle A—
        (A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *
[1] The case of Powerlock Systems, Inc., docket No. 2703–70, is consolidated herewith.