CARL T. MILLER TRUST, ALICE G. MILLER, TRUSTEE, AND ALICE G. MILLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10909–78.     Filed February 2, 1981.

*Bernard J. Traeger*, for the petitioners.
*Christy M. Pendley*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $14,428.37 in the Federal income tax of the Estate of Carl T. Miller for 1973. Respondent further determined that

petitioner Alice G. Miller is individually liable for the deficiency under section 3467 of the Revised Statutes of the United States as amended. The only issue for decision is whether the estate realized income during 1973 from the discharge of indebtedness within the meaning of section 61(a)(12).[1]

## FINDINGS OF FACT

The Estate of Carl T. Miller (hereinafter the estate) filed a Federal fiduciary income tax return (Form 1041) for 1973. At the time the petition herein was filed, petitioner Alice G. Miller (hereinafter petitioner) was a legal resident of Walworth, Wis.[2]

Carl T. Miller (decedent) died solvent and testate on November 4, 1972. Pursuant to decedent's will, his wife (petitioner) was appointed to be personal representative of his estate and trustee of the Carl T. Miller Trust created by the will. Probate of the will was conducted in the Walworth County Court, Probate Branch, and, during the proceedings, the court ordered that all claims against the decedent's estate be filed by February 21, 1973.

At the time of his death, and for a number of years prior thereto, decedent and petitioner each owned, individually, 50 percent of the outstanding shares of stock of the Waukesha Specialty Co. (Waukesha), a Wisconsin corporation. In addition, decedent and petitioner jointly owned all of the outstanding shares of stock of Walworth Foundries (Walworth), also a Wisconsin corporation. Decedent served as president of both corporations.

Sometime prior to 1959, decedent borrowed $15,000 from Waukesha. In 1963, he incurred a further obligation to Waukesha, also in the amount of $15,000.[3] These obligations, in the total amount of $30,000, were carried as assets (i.e., receivables) on the books of the corporation from the time they were incurred

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the year in question, unless otherwise noted.

[2]Petitioner served as personal representative of the estate and as trustee, as well as a beneficiary, of petitioner Carl T. Miller Trust, transferee of the estate's assets. It is agreed that, to the extent there is any deficiency in tax due from the estate, petitioner is liable as a fiduciary and transferee of the estate. See generally sec. 6901.

[3]This obligation resulted from the purchase of a lakefront cottage from Waukesha. Out of a total purchase price of $22,500, decedent made a downpayment of $7,500, leaving an unpaid balance of $15,000. This amount was listed on the books of the corporation as a note receivable.

by decedent through the date of his death and for several years thereafter. Throughout the 1950's and 1960's, decedent and petitioner jointly maintained Waukesha's corporate books and records.

A number of Waukesha's unaudited financial statements, prepared during the period April 30, 1967, through April 30, 1973, show as an asset of the corporation a "Note Receivable— Carl Miller" in the amount of $15,000. This figure represents the obligation incurred by decedent in 1963. The remaining $15,000 due from decedent is included in an amount designated in the financial statements as "Other Receivables."[4] The total amount shown as "Other Receivables," as of the various dates on which the financial statements were prepared, is as follows:

| | | |
|---|---|---|
| Apr. 30, 1967 | | $30,200 |
| Apr. 30, 1968 | | 29,300 |
| Apr. 30, 1969 | | 29,300 |
| Apr. 30, 1970 | | 29,300 |
| Apr. 30, 1971 | | 22,500 |
| Apr. 30, 1972 | | 15,000 |
| Oct. 31, 1972 | | (See n. 4 *supra*) |
| Nov. 30, 1972 | | 15,000 |
| Apr. 30, 1973 | | 15,000 |

It is not clear from the record to whom the obligation represented by the amount of "Other Receivables" in excess of the $15,000 owed by decedent was attributable; nor is it clear who made payments reducing the total to $15,000.

Both transactions giving rise to the decedent's obligations were conducted with the full knowledge of all officers and shareholders of Waukesha; however, despite the references described above to notes receivable, no written instrument setting forth terms for the payment of interest or principal was executed with respect to either obligation. Further, no payment of principal or interest has ever been made by decedent or his estate.

Subsequent to decedent's death, Waukesha did not attempt to recover the $30,000 that he owed to it by filing a claim against his estate. Steven Miller, decedent's son and a remainderman of

---

[4] The Oct. 31, 1972, financial statement varies from this pattern and simply lists the entire $30,000 as "Accounts Receivable—Carl Miller."

the Carl T. Miller Trust, was president of Waukesha during the period set by the Probate Court for the filing of claims.

In 1953, decedent borrowed at least $3,000 from Walworth. No written instrument was executed setting forth terms for repayment of the amount borrowed, but the obligation was carried as an asset (i.e., a receivable) on the corporate books and financial statements. The unaudited financial statements of Walworth for 1967 through 1970, inclusive, show as an asset a "Note Receivable—C. Miller" in the amount of $8,000. Five thousand dollars of this amount was paid to Walworth during 1971, reducing the "Note Receivable—C. Miller" to $3,000, the amount that decedent owed to Walworth at the time of his death. Walworth did not file a claim against decedent's estate for the $3,000.

In August 1973, the estate filed a Federal estate tax return (Form 706) on which it claimed a $33,000 deduction for decedent's liabilities to Waukesha and Walworth. Schedule B of the Form 706 discloses a valuation of the Waukesha stock owned by decedent of $88.85 per share, computed as follows:

Waukesha net worth as of Oct. 31, 1972 ....... $201,384.84
Shares of stock outstanding ............................... 1,700
Book value per share
(net worth ÷ shares outstanding) ...................... 118.46
Less 25-percent discount[1] ................................... 29.61
Value of stock per share
for estate tax purposes ..................................... 88.85

[1] Decedent's shares were discounted 25 percent because Waukesha was closely held and paid no dividends.

On September 2, 1975, decedent's estate was closed and its assets were transferred in trust to petitioner. Subsequently, respondent determined that the estate, as a result of Waukesha's and Walworth's failure to file creditor's claims against it, realized $33,000 in income from the discharge of indebtedness during 1973. Separate notices of deficiency were mailed to the Carl T. Miller Trust (of which petitioner is trustee), as transferee

of the assets of the estate, and to petitioner, as fiduciary of the estate.[5]

## OPINION

Section 61(a)(12)[6] provides that gross income includes income from the discharge of indebtedness. In general, upon the cancellation of an indebtedness, the debtor realizes income to the extent that his assets are freed from liability for the debt (whether the debt was secured or unsecured). See *Bialock v. Commissioner*, 35 T.C. 649, 661–662 (1961). The burden of proving that a discharge of indebtedness does not result in taxable income is on the debtor-taxpayer. Rule 142(a), Tax Court Rules of Practice and Procedure.

Determination of the point in time at which a debtor's obligation has been canceled, giving rise to income, is essentially a question of fact. In making such a determination, State statutes limiting the time within which a creditor may bring an action against a debtor to recover the debt, while of evidentiary value, are not necessarily controlling. *Bear Manufacturing Co. v. United States*, 430 F.2d 152, 154 (7th Cir. 1970), cert. denied 400 U.S. 1021 (1971); *Policy Holders Agency, Inc. v. Commissioner*, 41 T.C. 44, 49 (1963). But see *Securities Co. v. United States*, 85 F. Supp. 532 (S.D. N.Y. 1948). Thus, a debtor may realize income from the cancellation of indebtedness subsequent to[7] (as well as before)[8] the running of the statute of limitations on the debt. This is because, generally, a statute of limitations does not extinguish the debt itself, but simply provides a defense to an action by the creditor that must be affirmatively pleaded by the debtor. As stated by the Board of Tax Appeals in *G. M.*

---

[5]See note 20 *supra.*

[6]SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(12) Income from discharge of indebtedness;

[7]*Bear Manufacturing Co. v. United States*, 430 F.2d 152 (7th Cir. 1970), cert. denied 400 U.S. 1021 (1971); *Cohen v. Commissioner*, 77 F.2d 184 (6th Cir. 1935), affg. 28 B.T.A. 190 (1933), cert. denied 296 U.S. 610 (1935); *North American Coal Corp. v. Commissioner*, 32 B.T.A. 535 (1935), affd. 97 F.2d 325 (6th Cir. 1938); *G. M. Standifer Construction Corp. v. Commissioner*, 30 B.T.A. 184 (1934).

[8]*Policy Holders Agency, Inc. v. Commissioner*, 41 T.C. 44 1963); *Fidelity-Philadelphia Trust Co. v. Commissioner*, 23 T.C. 527 (1954).

*Standifer Construction Corp. v. Commissioner*, 30 B.T.A. 184, 186 (1934):

Local statutes are not decisive of what constitutes income * * * . We are of course bound to follow established state rules of property, * * * but there is no property right in a statute of limitations which affects the remedy alone and not the obligation. *Campbell v. Holt*, 115 U.S. 620.

Respondent contends that decedent's estate realized taxable income in 1973 from the discharge of indebtedness to Waukesha and Walworth, in the total amount of $33,000, as a result of those corporations' failure to file claims against the estate in accordance with the provisions of Wisconsin Statutes Annotated sections 859.01 and 859.05 (West 1971). Those sections provide in pertinent part as follows:

859.01 Limitation on filing claims against decedent's estates

(1)  * * * all claims against a decedent's estate * * * are forever barred against the estate, the personal representative and the heirs and beneficiaries of the decedent unless filed with the court within the time for filing claims.

859.05 Time to file

Upon the filing of an application for administration the court shall by order fix the time within which claims against the decedent shall be presented or be forever barred. The time shall be 3 months from the date of the order.

Petitioner's position is that, in light of the particular facts of this case and notwithstanding the failure of the corporations to file claims as required by Wisconsin law, the obligations to Waukesha and Walworth have yet to be discharged. We agree with respondent.

Wisconsin's "nonclaim statute" (Wis. Stat. Ann. secs. 859.01 and 859.05 (West 1971)), provides that all claims against an estate shall be forever barred unless filed within the time period established by the Probate Court. As opposed to the bar set up by a typical statute of limitations, the bar of Wisconsin's nonclaim statute cannot be waived. *In re Estate of Palmer*, 68 Wis. 2d 101, 227 N.W.2d 680 (1975); *In re Lathers' Estate*, 215 Wis. 151, 251 N.W. 466 (1933). See *Banking Commission v. Muzik*, 216 Wis. 596, 257 N.W. 174 (1934). This being so, and because Waukesha and Walworth failed to file claims in Probate Court, we find this case to be indistinguishable from *Estate of Bankhead v. Commissioner*, 60 T.C. 535, 539 (1973) (Alabama

nonclaim statute), and hold that "the debts * * * were extinguished by operation of law" on February 21, 1973.[9]

*Estate of Bankhead* also involved the indebtedness of a decedent who had borrowed money from a family owned corporation that failed to file a claim in probate. As in the present case, payment of unfiled claims was forbidden by State law. Notwithstanding these similarities, however, petitioner argues that *Estate of Bankhead* is distinguishable because there was no indication in that case "that the estate still intended to pay the debts, even though collection was unenforceable, after learning the nature" of the State nonclaim statute (60 T.C. at 539). Petitioner emphasizes the fact that, here, subsequent to the last day for filing claims against the estate, Waukesha and Walworth continued to include the debts as receivables on the corporate books and the estate included them as liabilities on the Federal estate tax return. She asserts that it is of controlling importance that decedent's indebtedness "has been continuously treated as a bona fide obligation by the parties involved" even though no claims were filed.

We do not find petitioner's argument to be persuasive. As previously noted, the bar of Wisconsin's nonclaim statute may not be waived.[10] Moreover, petitioner's assertions to the contrary notwithstanding, there is no evidence that the indebtedness to Waukesha and Walworth would ever be repaid. In fact, even though decedent and his estate were solvent, no payments as of the date of the trial had been made to the corporations. Petitioner's suggestion that the "execution of new notes by the transferee trust with a definite repayment schedule should be sufficient evidence" of an intention to repay the corporations is not timely.[11]

In support of her position that the debts have yet to be

---

[9]Compare *Estate of Miller v. Commissioner*, T.C. Memo. 1978–374; *Estate of Marcus v. Commissioner*, T.C. Memo. 1975–9.

[10]But see Wis. Stat. Ann. sec. 859.47 (West 1971 and Supp. 1980). For the estates of decedents dying after June 11, 1976, payment of unfiled claims by a personal representative may be allowed upon proof that they were "just demands" against the estate and "were paid within the time limited for the presentation of claims, or at any time with the consent of the heirs or beneficiaries affected by the payment." During 1973, the year here in issue, however, this section provided for the allowance of unfiled claims only if "paid within the time limited for the presentation of claims."

[11]It does not appear that such notes have been executed.

discharged, petitioner asserts that the claims of the corporations were barred at the time of decedent's death by virtue of the running of Wisconsin's general 6-year statute of limitations.[12] In this connection, she cites Wisconsin Statutes Annotated sec. 859.15 (West 1971), providing that a "claim shall not be allowed which was barred by any statute of limitations at the time of the decedent's death." Petitioner reasons that, because of this provision, the filing of claims in probate by Waukesha and Walworth (having been barred by the 6-year statute)[13] would have been a futile gesture, since the claims would have been disallowed in any event. She argues that, therefore, the failure of the corporations to file claims should not be considered to be of any particular consequence in determining whether there has been a cancellation of decedent's indebtedness.

Whatever the merits of petitioner's argument might be,[14] we

---

[12]See Wis. Stat. Ann. secs. 893.14 and 893.19 (West 1971), providing in pertinent part as follows:

893.14 Actions, time for filing

The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued * * *

893.19 Within 6 years; * * *

Within 6 years:

*     *     *     *     *     *     *

(3) An action upon any * * * contract, obligation or liability, express or implied * * *

[13]A long line of Wisconsin cases indicates that in Wisconsin, "unlike many states, the running of the statute of limitations extinguishes the [plaintiff's] right as well as the remedy" (*Schafer v. Wegner*, 78 Wis. 2d 127, 254 N.W.2d 193, 197 (1977)), and the defendant's "right to insist upon the statutory bar is a vested property right" (*Eingartner v. Illinois Steel Co.*, 103 Wis. 373, 79 N.W. 433, 434 (1899)). E.g., *Pulchinski v. Strnad*, 88 Wis. 2d 423, 276 N.W.2d 781 (1979); *Haase v. Sawicki*, 20 Wis. 2d 308, 121 N.W.2d 876 (1963); *Maryland Casualty Co. v. Beleznay*, 245 Wis. 390, 14 N.W.2d 177 (1944). Nevertheless, we do not understand petitioner to argue that, contrary to the general rule previously stated herein, the bar set up by the Wisconsin 6-year statute of limitations should be considered as determinative of the point at which decedent's obligations were canceled. For this reason, and because we think petitioner has failed to show that the 6-year statute had run, we express no conclusion regarding the effect of Wisconsin's statute of limitations vis-a-vis the effect generally given a State statute of limitations in determining when a discharge of indebtedness has occurred.

We do note, however, that a debtor may waive the bar of the Wisconsin 6-year statute. See Wis. Stat. Ann. sec. 893.01 (West 1971); *Johnson v. Heintz*, 73 Wis. 2d 286, 243 N.W.2d 815 (1976); *Hartford Fire Ins. Co. v. Osborn Pl. & Htg.*, 66 Wis. 2d 454, 225 N.W.2d 628 (1975); *Mead v. Ringling*, 266 Wis. 523, 64 N.W.2d 222 (1954). In this connection, see *Bear Manufacturing Co. v. United States*, 430 F.2d 152, 154 (7th Cir. 1970), cert. denied 400 U.S. 1021 (1971), stating that the point at which a liability terminates is not necessarily controlled by a local statute of limitations since a "taxpayer may choose * * * to acknowledge and pay a liability after the statute of limitations has run."

[14]On brief, petitioner states that a personal representative of an estate may not waive Wis. Stat. Ann. sec. 859.15 (West 1971). The implication is that petitioner, as personal representative

need not consider it. The fundamental premise of her position is that the corporations' claims were time-barred by the 6-year statute of limitations at the time of decedent's death, and this we find she has failed to establish.

Depending on the terms for repayment of the several loans made to decedent, actions by the corporations to recover the amounts borrowed might have accrued and, therefore, the 6-year statute of limitations may have begun to run immediately upon the creation of each debt *or* at some specified or indefinite (but reasonably determinable) time in the future. See and compare *Accola v. Giese*, 223 Wis. 431, 271 N.W. 19 (1937) (a note that designated no time for payment was payable on demand and, thus, due when the loan giving rise to the note was made) and *Phelan v. Fitzpatrick*, 84 Wis. 240, 54 N.W. 614 (1893) (testimony established that oral agreement specified no time for repayment of a loan) with *Albright v. Weissinger*, 238 Wis. 355, 298 N.W. 220 (1941) (where no time for payment is specified, but the parties to a loan transaction contemplate a considerable delay prior to the making of a demand for payment, the statute of limitations does not begin to run until after the lapse of a reasonable time within which to make the demand) and *Ott v. Boring*, 131 Wis. 472, 110 N.W. 824, 828 (1907) ("where some condition precedent to the right of action exists, whether it be a demand and refusal or some other act or contingency, the cause of action does not accrue, nor the statute begin to run, until that condition is performed"). See generally Annot., 159 A.L.R. 1021 (1945).

Here, the stipulation states that no written instruments were executed setting forth terms for repayment of the money that decedent borrowed from Waukesha and Walworth, and the record contains no evidence regarding the substance of the terms for repayment (if any) contemplated in the loan agreements between decedent and the corporations. Accordingly, we are unable to determine whether and when the Wisconsin

---

of the estate, could not have paid time-barred claims of the corporations even though she desired to do so. This was clearly intended to strengthen her contention that it would have been pointless for the corporations to file claims in probate. However, we fail to see how it advances her argument that the obligations to Waukesha and Walworth have yet to be discharged. Cf. *Estate of Bankhead v. Commissioner*, 60 T.C. 535, 539 (1973) (Alabama statute "not only provided the estate with a complete defense to any suit on the various loans, but affirmatively forbade any voluntary payment by the executor").

statute of limitations began to run on the decedent's debts. Therefore, petitioner has not shown that Wisconsin Statutes Annotated sec. 859.15 (West 1971), which disallows all claims barred by a statute of limitations at the time of a decedent's death, is applicable to decedent's indebtedness to Waukesha and Walworth.

Relying on *Whitfield v. Commissioner*, 311 F.2d 640 (5th Cir. 1962), revg. and remanding *Alabama-Georgia Syrup Co. v. Commissioner*, 36 T.C. 747 (1961), petitioner further argues that even if the indebtedness in question was discharged as a result of the failure to file claims, the estate was not enriched economically thereby and, thus, realized no taxable income. Petitioner again emphasizes that the amounts decedent owed to Waukesha and Walworth were carried as assets by the corporations [15] and included as liabilities of the estate on the estate tax return. She asserts that: "As assets of the two corporations, this enhanced the value of the shares of the corporations. As debts to the estate, they cancelled out the enhanced value [of the shares held by the estate]." Apparently, it is her position that the estate could not benefit economically from a cancellation of its indebtedness to the corporations because a discharge of the debts would result in a decrease in corporate assets that, in turn, would reduce the book value of the corporate stock included in the gross estate in an amount equivalent to the canceled indebtedness. We find this argument to be without merit.[16]

First, we note that petitioner's analysis is not accurate, because the estate did not own 100 percent of the corporate stock. Second, while any reduction in the book value of the corporate stock may well have been relevant in determining the gross estate for estate tax purposes, it has no relevance whatsoever for purposes of determining whether the estate

---

[15]Petitioner complains that respondent's determination that the debts had been discharged by operation of law came too late for the corporations to amend their returns and claim bad debt deductions. She, therefore, characterizes respondent's position as "manifestly unjust," "sinister," and "scandalous." However, if the cancellation amounted to a constructive dividend, the corporations would not have been entitled to bad debt deductions. Of course, whether or not the cancellation resulted in dividend income has no impact on the case at bar. See *Estate of Bankhead v. Commissioner*, supra at 540 n. 5; *Estate of Miller v. Commissioner*, T.C. Memo. 1978–374.

[16]Compare *Shephard v. Commissioner*, T.C. Memo. 1963–294, affd. per curiam 340 F.2d 27 (6th Cir. 1965), cert. denied 382 U.S. 813 (1965).

realized taxable income from the cancellation of indebtedness. Regardless of the collateral effects on the value of the corporate stock, which may be taken into account in determining its basis for income tax purposes when the stock is sold, the fact remains that the cancellation relieved the estate from liability for the debts.[17]

Furthermore, petitioner's reliance on *Whitfield v. Commissioner, supra,* is misplaced. In that case, the court held that there was *no cancellation* of indebtedness on the facts before it and, even if there was, the estate was not enriched. Significantly, the corporate creditor there had filed a claim against the deceased debtor's estate, creating a lien on the assets of the estate, and the assets were transferred to a beneficiary of the estate subject to the debt. Here, the estate's assets were freed from liability for the debts; the value of the estate was enlarged by the abolition of a duty to repay the debts. "It is this undeniable economic benefit that creates income for purposes of the Internal Revenue Code under circumstances such as those here present." *Estate of Bankhead v. Commissioner,* 60 T.C. at 540.

Finally, petitioner argues that respondent did not properly raise the question of income being realized from the discharge of decedent's $3,000 indebtedness to Walworth. Apparently, this amount was initially placed in issue after petitioner had appealed a revenue agent's determination on another question to respondent's district conference staff. In any event, the notice of deficiency was clearly sufficient to apprise petitioner of the respondent's position. Suffice it to say that, generally, "this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations." *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 327 (1974).

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[17]Had the corporations paid a cash dividend to the estate, the book value of the stock would have been reduced as a result of the decrease in corporate assets. This would not have made the dividend any less taxable to the estate, however.