T.C. Summary Opinion 2015-15

UNITED STATES TAX COURT

SUZANNE MOORE BACON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28012-09S.                          Filed March 2, 2015.

Suzanne Moore Bacon, pro se.

<u>Jeremy D. Cameron</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1] Unless otherwise indicated, all subsequent section references are to the
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax for 2007 of $1,012.

The sole issue for decision is whether petitioner received income in 2007 from cancellation of indebtedness (COI). We hold that she did not.

## Background

All of the facts have been stipulated, and they are so found.

At the time that the petition was filed, petitioner resided in the State of Florida.

## 1994 Northridge Earthquake

Following the earthquake that occurred in Northridge, California, in mid-January 1994, petitioner applied to the Federal Emergency Management Agency (FEMA) for disaster assistance funds to make repairs on a residence on Mayall Street in Northridge. At the time of her application she represented to FEMA that the Mayall Street property was her primary residence.

---

[1](...continued)
Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In late January 1994 petitioner received disaster assistance funds from FEMA totaling $3,450 to repair earthquake damage sustained at the Mayall Street address. FEMA subsequently determined that such property did not qualify as petitioner's primary residence and that petitioner was therefore not eligible to receive assistance. In October 1994 FEMA notified petitioner of its determination and sought to recoup the disaster assistance funds that petitioner had previously received. Petitioner did not dispute FEMA's determination, nor did she return any of the disaster assistance funds to FEMA.

FEMA's Efforts To Recoup the Disaster Assistance Funds

Between January 1995 and September 1997 FEMA sent petitioner eight letters and left four voicemail messages seeking to collect the amount due. When petitioner did not make any payments during that period, FEMA ultimately prepared a Claims Collection Litigation Report (CCLR) in October 1997 and referred petitioner's account to the Department of Justice (DOJ) for judicial enforcement of its claims. The CCLR stated that petitioner's default date was January 27, 1995, and that the Government's claim would expire on January 27, 2001, six years after the original default. This was consistent with the statute limiting the time for the Government to commence an action to recover the debt.

28 U.S.C. sec. 2415 (2006) (discussed below). The DOJ never commenced any suit or initiated any other action to recover the funds.

In February 2008, after petitioner's account had remained dormant for over 10 years, FEMA mailed petitioner a Form 1099-C, Cancellation of Debt, reporting discharge of indebtedness of $6,297 for 2007. Such amount represented the principal amount initially distributed to petitioner in January 1994 plus the interest and penalties accrued through 2007. Petitioner did not report any COI on her timely filed Federal income tax return for 2007.

Notice of Deficiency

In August 2009 respondent determined a deficiency of $1,012 for 2007 by increasing petitioner's income by the amount reported on the aforementioned Form 1099-C. Petitioner responded by filing a petition for redetermination with this Court. Subsequently, petitioner filed a petition with the bankruptcy court, and proceedings in this Court were stayed from October 2010 through September 2013. See 11 U.S.C. sec 362(a)(8) (2006). The Internal Revenue Service did not pursue a claim relating to the COI in the bankruptcy court. Cf. sec. 6871(b).

Discussion

The Court decides the issue in this case on the basis of the evidence and without regard to either the burden of production, see sec. 6201(d); Del Monico v.

Commissioner, T.C. Memo. 2004-92, or the burden of proof, see Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636; cf. sec. 7491(a).

Cancellation of Indebtedness Income

Section 61 generally defines gross income as "all income from whatever source derived". Section 61(a)(12) specifically provides that gross income includes income from the discharge of indebtedness, commonly referred to as cancellation of indebtedness, or COI, income. See Gitlitz v. Commissioner, 531 U.S. 206, 213 (2001); United States v. Kirby Lumber Co., 284 U.S. 1 (1931). COI generally produces income in an amount equal to the difference between the amount due on the obligation and the amount paid for the discharge. See Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), aff'g T.C. Memo. 1992-673. The rationale of this principle is that COI provides the debtor with an economic benefit that is equivalent to income. United States v. Kirby Lumber Co., 284 U.S. at 3; see Friedman v. Commissioner, 216 F.3d 537 (6th Cir. 2000), aff'g T.C. Memo. 1998-196; Cozzi v. Commissioner, 88 T.C. 435, 445 (1987); see also sec. 108.

The question as to the year in which a taxpayer realizes COI income is one of fact to be determined on the basis of the evidence. See Policy Holders Agency,

Inc. v. Commissioner, 41 T.C. 44, 47 (1963); Callan Court Co. v. Commissioner, T.C. Memo. 1965-261.  A debt is deemed discharged (and COI income is generated) the moment it becomes clear that such debt will never be repaid.  Cozzi v. Commissioner, 88 T.C. at 445.  Determining when that moment occurs requires a practical assessment of the facts and circumstances.  Id.  "Any 'identifiable event' which fixes the [creditor's] loss with certainty may be taken into consideration."  Id. (citing United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927)); Kleber v. Commissioner, T.C. Memo. 2011-233, 2011 WL 4485037.  The Court has acknowledged that it is often impossible to find only one event that clearly establishes the moment at which a debt is discharged, such as pinpointing the moment when property has been abandoned.  See Cozzi v. Commissioner, 88 T.C. at 445.  That is not the case here.

There exist a number of identifiable events, any one of which could reasonably indicate that a debt has been discharged.  Section 1.6050P-1(b)(2)(i) and (iv), Income Tax Regs., for example, provides an exclusive list of eight "identifiable events" under which debt is discharged for information reporting purposes.  When one or more of these identifiable events has occurred, the creditor must issue a Form 1099-C reporting the existence of COI income.  Accordingly, we address the identifiable event that informs our decision.

Issuance of Form 1099-C

In February 2008 FEMA issued a Form 1099-C reporting the cancellation in 2007 of indebtedness petitioner incurred in 1995.  Respondent contends that petitioner's debt was discharged in 2007 because FEMA issued the Form 1099-C for that year.  Although the issuance of a Form 1099-C by a creditor is indicative of the COI, it is not dispositive of that matter.  Kleber v. Commissioner, 2011 WL 4485037, at *3.  In the instant case, it appears that the issuance of the Form 1099-C in 2007 was in error because, as discussed below, petitioner's debt was in fact discharged by operation of law some six years earlier, on January 27, 2001.

28 U.S.C. sec. 2415

Between January 1995 and October 1997, FEMA attempted to collect the debt from petitioner through administrative procedures.  On October 9, 1997, FEMA referred the matter to the DOJ for judicial enforcement of its claims against petitioner.  According to the CCLR that FEMA prepared to accompany the referral, the period of limitations on petitioner's debt would expire on January 27, 2001, six years after the date of petitioner's original default.  The six-year limitation period derives from 28 U.S.C. sec. 2415, which provides in relevant part that

every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues * * *.

As a general proposition, the sovereign is not subject to time limitations on its actions. BP Am. Prod. Co. v. Burton, 549 U.S. 84, 95 (2006); Guaranty Trust Co. v. United States, 304 U.S. 126 (1938). However, in enacting 28 U.S.C. sec. 2415, Congress bound the United States to act promptly in protecting its financial interest and affirmatively barred actions not brought within the specified six-year period. Accordingly, the expiration of the period of limitations on January 27, 2001, extinguished the right of the United States to collect the debt and extinguished the debt as a result.[2]

Section 1.6050P-1(b)(2)(i)(C), Income Tax. Regs., recognizes this situation as an identifiable event that cancels indebtedness, generates COI income, and requires the issuance of a Form 1099-C. Enumerated as the third of eight "identifiable events" giving rise to COI income, subdivision (i)(C) provides:

---

[2] Although 28 U.S.C. sec. 2415(a) (2006) bars the government from filing a complaint greater than six years after the right of action accrues, it does not prohibit the assertion of the obligation as a counterclaim in a suit brought against the United States or by offset. See 28 U.S.C. sec. 2415(f); Thomas v. Bennett, 856 F.2d 1165, 1169 (8th Cir. 1988). However, neither of these exceptions is applicable in the instant case.

(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding; [Emphasis added.]

The Court recognizes that, in general, the expiration of a period of limitations on collection of indebtedness does not extinguish an underlying debt obligation but simply provides an affirmative defense for the debtor in an action by the creditor. Miller Trust v. Commissioner, 76 T.C. 191, 195 (1981). This is confirmed by section 1.6050P-1(b)(2)(ii), Income Tax Regs. However, the instant case deals with the second clause of the subdivision, "expiration of a statutory period for filing a claim". Sec. 1.6050P-1(b)(2)(i)(C), Income Tax Regs. That clause is not so limited.

Petitioner defaulted on her debt to FEMA in or around January 1995. FEMA curtailed its efforts to collect the debt administratively and referred the matter to the DOJ in 1997. The period of limitations for filing an action expired in January 2001, and the underlying debt was extinguished when the United States became time barred from collection through judicial enforcement. Because the statutory period for filing an action had expired in 2001, there was no debt in

existence when FEMA issued the Form 1099-C regarding calendar year 2007, and the Form 1099-C appears to have been issued in error. See id.

## Conclusion

Petitioner did not receive COI income from FEMA in 2007. Accordingly,

Decision will be entered

for petitioner.