NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0296n.06

No. 10-1145

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PETER M. COMENSOLI,

    Petitioner-Appellant,

        v.

COMMISSIONER OF INTERNAL REVENUE,

    Respondent-Appellee.

**FILED**
**May 05, 2011**
LEONARD GREEN, Clerk

On Appeal from the
United States Tax Court

_____/

**Before:**     **GUY, COOK, and STRANCH, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**     Petitioner Peter M. Comensoli appeals from the decision of the Tax Court upholding the levy and federal tax lien assessed against Comensoli personally for unpaid employment taxes, including penalties and interest, owed by Paradym Group, LLC, for the fourth quarter of 2005. There is no dispute that Paradym was a single-member entity and did not make an affirmative election to be treated as a corporation separate from its owner under the applicable "check-the-box" regulations. Nor did Comensoli contest the fact or amount of the debt. The only disputed issue was whether the owner of Paradym was Comensoli, or a corporation that was, in turn, owned by Comensoli. Finding no clear error, we affirm the decision of the Tax Court.

**I.**

The Internal Revenue Service (IRS) determined Paradym's employment tax liability, including penalties and interest, to be $42,016.62, and sent Comensoli a Notice of Intent to Levy in April 2007, and a Notice of Federal Tax Lien Filing in June 2007. Comensoli requested and received collection-due-process hearings under 26 U.S.C. §§ 6330 and 6320. The IRS issued a Notice of Determination upholding the levy on September 18, 2007, and a Notice of Determination upholding the lien on January 11, 2008. Those determinations rejected Comensoli's contention that he was not the sole owner of Paradym. Comensoli filed separate petitions contesting the determinations, which were consolidated for trial. Trial was held on February 3, 2009, and the Tax Court issued its decision in favor of the Commissioner on October 26, 2009. This appeal followed.

## II.

We review the Tax Court's legal conclusions *de novo* and its factual findings for clear error. *Zack v. Comm'r*, 291 F.3d 407, 412 (6th Cir. 2002); *Ekman v. Comm'r*, 184 F.3d 522, 524 (6th Cir. 1999). "A finding is clearly erroneous when, although there is evidence to support it, a review of the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made." *Gross v. Comm'r*, 272 F.3d 333, 343 (6th Cir. 2001); *see also Holmes v. Comm'r*, 184 F.3d 536, 543 (6th Cir. 1999). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Further, we give considerable deference to the Tax Court's "first-hand assessment of the credibility of witnesses." *Kosinski v. Comm'r*, 541 F.3d 671, 680 (6th Cir. 2008); *see also Indmar Prods.*

*Co. v. Comm'r*, 444 F.3d 771, 778 (6th Cir. 2006).

Paradym Group, LLC, admittedly a one-member limited liability company, did not file a Form 8832, Entity Classification Election, electing to be treated as a separate entity for federal tax purposes under the check-the-box regulations, Treas. Reg. § 301.7701-3(a) (26 C.F.R., 2005 ed.). As a result, Paradym was "disregarded" as an entity separate from its owner and deemed to be a sole proprietorship for all federal tax purposes, Treas. Reg. §§ 301.7701-2(a), (c)(2), and 301.7701-3(b)(ii). By not electing treatment as a separate entity, Paradym's owner avoided double taxation. *See Littriello v. United States*, 484 F.3d 372, 375-76 (6th Cir. 2007) (upholding the validity of these regulations). As noted, the only disputed issue was whether Comensoli or a corporation owned by him was the owner of Paradym.[1]

**A.     Facts**

The stipulated facts and evidence admitted at trial included Paradym's "Articles of Organization," filed with the State of Michigan on December 20, 2004, which identified Paradym as a "temporary and contract labor agency." This organizing document was signed and filed by Comensoli as Paradym's "Organizer." Both the 2006 and 2007 Limited Liability Company Annual Statements for Paradym were signed by Comensoli in the box for "authorized member, manager or agent." On the 2006 Annual Statement, dated December 4, 2005, Comensoli wrote in his title as "Managing Member," while on the 2007 Annual Statement, dated January 12, 2007, Comensoli wrote in his title as "Owner." No other person

---

[1]Although these regulations have been amended to provide that a single-owner entity is no longer disregarded for employment tax purposes only, they are inapplicable here because the amended provisions apply to wages paid after January 1, 2009, Treas. Reg. § 301.7701-2(a), (c)(iv) and (e)(5) (26 C.F.R., 2009 ed).

or entity was identified in these documents as an owner, member, or manager of Paradym.

Federal employment taxes were paid by Paradym for the first three quarters of 2005. The returns for the first two quarters were signed by Comensoli as Paradym's "President." The third and fourth quarter returns were also prepared with a signature block for Comensoli to sign as "President," but both signature blocks were left blank. All four quarterly returns automatically listed A. Adonu Idahosa, CPA, PLC, and the firm Symphony Financial Services, Inc., in the section for "paid preparers," although none of these returns were prepared or signed by Idahosa. Comensoli and Idahosa, friends and long-time business associates, divided office space between themselves, Symphony, and Paradym. Comensoli testified that he reported his income and expenses from Symphony on Schedule C of his personal tax return.

Symphony was initially incorporated as TCF Leasing, Inc., by Comensoli and several family members in 1992, and later filed a certificate of assumed name to do business as Allen Associates. In 2000, after selling the name to TCF Bank, TCF Leasing filed an amendment changing its name to Symphony Financial Services, Inc., and renewed the certificate of assumed name to do business as Allen Associates. In April 2007, another amendment was filed changing the corporation's name from Symphony to Back Porch Workout, Inc. (Back Porch, f/k/a Symphony). All of these filings were signed by Comensoli on behalf of the corporation. Comensoli testified that he is the sole shareholder of Back Porch.

Comensoli, who had a degree in accounting and almost five years of experience working as an IRS Revenue Agent, testified that he did not know that the fourth quarter

employment taxes had not been paid until collection action was taken against him personally in January 2007. At trial, Comensoli claimed that although deposits had been made with the IRS by Paradym for the fourth quarter of 2005, the deposits were returned because Paradym had contracted with a payroll processing company that also made deposits on behalf of Paradym. As a result, Comensoli did not know about the deficiency when he took a personal loan of $35,000 to $40,000 from Paradym to invest in a restaurant franchise in early 2006. Judy Cherrington, the payroll manager for Paradym, confirmed at trial that this transaction was booked as a loan to Comensoli.

Comensoli testified that Back Porch—as Symphony—paid the filing fee associated with organizing Paradym in December 2004, but offered no evidence substantiating that claim. Comensoli did offer one check written by him from Allen Associates—the registered assumed name for the corporation—to Paradym for $3,600 and dated June 22, 2006. This, Comensoli testified, was a contribution of working capital by the corporation. Although he claimed that other contributions were also made, this was the only check produced. No accounting records were offered to corroborate that this (or other payments) were contributions to Paradym's capital account.

When interviewed by a Revenue Agent in April 2007, Comensoli denied that he was the owner of Paradym, claimed that he had not known about the tax liability, and explained that he had been unable to attend to his business or personal matters for nearly two years following the death of his son from cancer in March 2005. He added that Cherrington was getting the records together, which were "very incomplete," and said that he would be filing

returns to establish Back Porch's ownership of Paradym. In fact, at trial, Comensoli explained that he had reported income from the corporation on his individual return until 2007, when he "chose to start using it as a[n] ownership vehicle" for the tax year 2005.

Comensoli provided the IRS with a preliminary draft of a partnership income tax return for Paradym for 2005 (Form 1065), which was prepared in June 2007. Attached to the Form 1065 was a Schedule K-1 listing Back Porch as the 100% member manager of Paradym and reflecting a pass-through loss of $25,968.00 for the year 2005. Also, a second K-1 listed "Anyone" as a 0% LLC member manager. Idahosa explained that this second K-1 was created because the tax preparation software would not let him print the return with only one "partner." This return was admitted into evidence, as were corporate income tax returns for Back Porch for 2005 and 2006 (Form 1120). The corporation's tax return for 2005, also prepared in June 2007, showed a loss from Paradym of $25,968.00 and had the K-1 attached that listed Back Porch as the 100% LLC member-manager of Paradym. Idahosa signed both of these returns as the tax preparer using the name Symphony Financial Services, while Comensoli signed only Paradym's partnership return. Comensoli testified that it was Idahosa's error that caused a partnership return to be prepared for the LLC.

Finally, at trial, Comensoli produced for the first time what purported to be a copy of an "Operating Agreement for Paradym Group, LLC," "made effective as of December 7, 2004, by and among PARADYM GROUP, LLC a Michigan Limited Liability Company (the 'Company'), and SYMPHONY FINANCIAL SERVICES, INC., which shall hereafter collectively be referred to as the 'Member.'" This document is signed but not dated by

Comensoli for Paradym and for Symphony, as Paradym's member. (Above the signature is "PARADYM GROUP, LLC, a Michigan Limited Liability Company," and below the signature is "Symphony Financial Services, Inc. Its: Member.") Comensoli testified that he found this copy in a file while looking for records in response to the Commissioner's trial subpoenas. No original or other corroboration was offered. When asked why then Paradym's filings with the State of Michigan did not identify Symphony (now Back Porch) as Paradym's owner or member, Comensoli attributed his earlier representations that he was Paradym's "member" or "owner" to mistake and grief-stricken inattention caused by his son's death in March 2005.

## B.    Analysis

On the dispositive question, the Tax Court determined as a factual matter that Comensoli was the sole member of Paradym Group, LLC, explaining that:

> Petitioner's argument that Back Porch Workout owned Paradym is not credible. Petitioner formed Paradym, and he has not offered any evidence to indicate that he transferred any of his membership units in Paradym since it was formed. Since its inception, petitioner has held himself out as owner of Paradym.

> Although petitioner offered a Form 1065, U.S. Return of Partnership Income, for Paradym for tax year 2005, that document is not credible. . . . Not only was the Form 1065 created in 2007 after respondent had begun collection proceedings, but petitioner testified that the second Schedule K-1 was fabricated because it was the only way to process a partnership return for Paradym using petitioner's and Mr. Idahosa's tax return preparation software.

The Tax Court concluded that: "Paradym is disregarded pursuant to section 301.7701-3(b)(1)(ii), Proced. & Admin. Regs." and "Respondent is authorized to collect Paradym's unpaid tax from petitioner by means of the lien and levy."

Claiming that the Tax Court's finding is clearly erroneous, Comensoli points to several minor factual errors in the Memorandum Opinion; asserts that too much weight was afforded to the titles and designations used in Paradym's filings with the State of Michigan; and faults the decision for disregarding both the Operating Agreement identifying Paradym's member as Symphony and the check written to Paradym by Allen Associates (a/k/a Symphony). The factual errors included (1) misidentifying the family members who incorporated TCF Leasing as his wife and children, instead of his wife and parents; (2) stating that Comensoli "repeatedly" changed the name of TCF Leasing, when it was changed only twice (to Symphony and then to Back Porch); and (3) referring to Back Porch as an LLC, when there was no dispute that Back Porch was a corporation. None of these errors are material to the Tax Court's decision, however.

Comensoli also asserts that the Tax Court misapprehended the issue by characterizing his argument to be that he was not the *sole* member of Paradym. On the contrary, it is clear that the Tax Court correctly understood the question to be whether Paradym, a single-member LLC, was owned by Comensoli as the Commissioner contended, or was owned by the corporation Back Porch (f/k/a Symphony) as Comensoli claimed. Further, Comensoli's argument that the Tax Court improperly relied on the failure to file the Form 8832 to suggest that Comensoli was the owner of Paradym also misses the mark. The record is clear that the Tax Court relied on the failure of Paradym to make the election to establish that Paradym is a disregarded entity whose owner, whomever that might prove to be, would be liable as the employer.

Finally, Comensoli argues that the Tax Court clearly erred (1) by affording improper weight to the titles and designations he used on Paradym's filings with the State of Michigan, and to Idahosa's mistakes in preparing the partnership return for Paradym; and (2) by giving no weight to either the belatedly produced Operating Agreement, or the purported capital contribution from Allen Associates. Comensoli argues that under Michigan law an "organizer" of an LLC can be, but does not have to be, a member of the LLC. Be that as it may, the fact that Comensoli personally identified himself as Paradym's "organizer" was relevant. Comensoli's undisputed self-identification as Paradym's "managing member" and "owner" in the Annual Reports filed with the State for 2005 and 2006 is evidence that he held himself out as Paradym's sole member until collection action was taken against him personally.

Nor was it improper to consider the irregularity and questionable nature of the tax returns that Idahosa prepared at Comensoli's behest for Paradym and Back Porch Workout in June 2007. The judge was in a position to assess the credibility of the witnesses, including whether Comensoli's state of mind following the death of his son in March 2005 had any bearing on his representation that he was Paradym's owner. Although the decision did not state the reasons for discounting the check to Paradym or the copy of the Operating Agreement, there can be no question that this evidence was necessarily discounted as proof of Paradym's ownership. The check was admitted into evidence, but there was no showing of how it was treated on Paradym's books or other corroboration of any kind that it was a capital contribution by the corporation. Further, the copy of the Operating Agreement, while

probably the most direct evidence that Paradym was organized with Symphony as its single member, was unauthenticated, undated, and uncorroborated even though it was purportedly signed by Comensoli. We cannot conclude that it was clear error to disregard this questionable evidence. *Conti v. Comm'r*, 39 F.3d 658, 664 (6th Cir. 1994) (recognizing that the Tax Court may disregard even uncontradicted testimony when it finds that it is lacking in credibility, or is improbable, unreasonable or questionable).

Giving appropriate deference to the fact-finder's credibility determinations, there is scant evidence to support Comensoli's claim that Paradym was indeed organized and owned by the corporation Symphony (n/k/a Back Porch). Although there was evidence to the contrary, mostly through Comensoli's own testimony, the fact-finder's choice between permissible views of the evidence cannot be clearly erroneous and we are not left with a definite and firm conviction that a mistake has been made.

**AFFIRMED.**