# United States Tax Court

T.C. Memo. 2023-107

STEVEN JACOBOWITZ,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 14387-19.                    Filed August 16, 2023.

————

*Thomas S. Groth*, for petitioner.

*William C. Bogardus*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, *Judge*: By statutory notice of deficiency dated April 29, 2019, the Internal Revenue Service (IRS or respondent) determined a deficiency in petitioner's federal income tax of $15,266 for the 2016 taxable year. After certain concessions by petitioner,[1] the issue remaining for decision is whether for 2016 petitioner must include in gross income cancellation of indebtedness (COD) income of $34,964.[2] We hold he must.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulation of Facts and the attached Exhibits are incorporated herein

---

[1] By way of a Stipulation of Settled Issues petitioner conceded that he is liable for unreported education program payments of $1,412, as well as an unreported additional 10% tax of $141 on the education program payments.

[2] Some monetary amounts are rounded to the nearest dollar.

[*2] by this reference. Petitioner resided in Connecticut when his Petition was timely filed with the Court.

Petitioner was the sole member of an entity named Sagasolutions.com (Sagasolutions), a single-member limited liability company he established in November 2003. Sagasolutions ceased to exist in approximately May 2008. During its existence it designed and delivered technical solutions to companies having problems in the areas of customer service, sales, and marketing. Additionally, during its existence it was a disregarded entity for federal income tax purposes; it never filed Form 8832, Entity Classification Election, with the IRS to be classified otherwise. The last year for which Sagasolutions' income (or loss) was reported to the IRS was 2009.

On January 17, 2006, Sagasolutions secured a $25,000 small business line of credit with Connecticut-based Newtown Savings Bank (Newtown). In connection with this line of credit petitioner executed on Sagasolutions' behalf a promissory note and a security agreement. The promissory note set forth the terms of the line of credit, including the interest rate, the minimum advance amount, the monthly principal repayment amount and date, the amounts for finance charges and other fees, and that the line of credit would be linked as overdraft protection to petitioner's personal checking account, also at Newtown.[3] The security agreement set forth in pertinent part what property of Sagasolutions was pledged as security for the repayment of the line of credit and under what circumstances Sagasolutions would be in default of its payment or other obligations with respect to the line of credit.

Sagasolutions took advances from, and made payments to, the line of credit numerous times from January 2006 to September 2010. The first advance, of $7,000, was on January 24, 2006, and the last, of $625, was on April 5, 2010. When Sagasolutions' last principal payment of $52 was made on September 27, 2010, the outstanding principal balance for the line of credit was $24,948.

Newtown sent Sagasolutions and the IRS a Form 1099−C, Cancellation of Debt, for 2016. This form indicated that as of December 30, 2016, Newtown had discharged the outstanding principal balance and accrued interest, which totaled $34,964, after the September 27,

---

[3] Sagasolutions had its own bank account at Newtown over which petitioner had sole signature authority; alternatively, the line of credit may have been linked as overdraft protection to that bank account.

**[\*3]** 2010, payment owed on the line of credit. The form also indicated that the reason for the discharge was "Statute of limitations or expiration of deficiency period."

Petitioner prepared and timely filed (with the assistance of Ernst & Young as required by his employer at the time) his 2016 federal income tax return. As relevant here, on this return petitioner reported adjusted gross income of $709,153, consisting of wages of $707,265, taxable interest of $13, taxable dividends of $1,411, and capital gains of $464. Petitioner did not report on this return the COD income totaling $34,964.

Following an examination of petitioner's 2016 federal income tax return, the IRS determined in pertinent part that the outstanding principal balance and accrued interest owed on the line of credit that Newtown discharged, totaling $34,964, was taxable "other"/COD income to petitioner. The April 29, 2019, notice of deficiency issued to petitioner reflects this determination.

OPINION

I.     *Burden of Proof*

As a preliminary matter we address who has the burden of proof in this case.

In general, the IRS's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a);[4] *Welch v. Helvering*, 290 U.S. 111, 115 (1933). For this presumption to adhere in cases (such as this one) involving unreported income, the Commissioner must provide some reasonable foundation connecting the taxpayer to the income-producing activity. *El v. Commissioner*, 144 T.C. 140, 142−43 (2015) (citing *Llorente v. Commissioner*, 649 F.2d 152, 156 (2d Cir. 1981), *aff'g in part, rev'g in part and remanding* 74 T.C. 260 (1980)). Once the Commissioner has done this, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commisioner's determinations are arbitrary or erroneous. *Id.* at 143. Similarly, under section 6201(d), if a taxpayer in any court proceeding asserts a

---

[4] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] reasonable dispute with respect to any item of income reported on an information return (such as a Form 1099−C) and has fully cooperated with the Commissioner, then the Commissioner shall have the burden of producing reasonable and probative information concerning the deficiency, in addition to the information return. *See also Kleber v. Commissioner*, T.C. Memo. 2011-233, slip op. at 5.

It is undisputed that Sagasolutions was a single-member limited liability company with petitioner as its sole member and that petitioner, on behalf of Sagasolutions, executed a promissory note and a security agreement for a line of credit with Newtown. It is also undisputed that Sagasolutions had an outstanding line of credit balance of $24,948 and that Newtown forgave that outstanding balance plus accrued interest, which totaled $34,964; with respect to that $34,964, Newtown sent the IRS and Sagasolutions a Form 1099−C, and petitioner's dispute, as discussed below, involves solely whether the $34,964 is taxable COD income to him (and thus not as to the accuracy of the form). On the basis of this undisputed evidence, we are satisfied that respondent has provided a reasonable foundation connecting petitioner with the unreported income. The burden thus shifts to petitioner to show that the IRS's determination with respect to this income was arbitrary or erroneous.[5]

II.    *COD Income*

A taxpayer's gross income includes "all income from whatever source derived," including COD income. § 61(a)(12).[6] "The underlying rationale for the inclusion of canceled debt as income is that the release from a debt obligation the taxpayer would otherwise have to pay frees up assets previously offset by the obligation and acts as an accession to wealth—i.e., income." *Weiderman v. Commissioner*, T.C. Memo. 2020-109, at *23 (quoting *Bui v. Commissioner*, T.C. Memo. 2019-54, at *7−8); *see also Landreth v. Commissioner*, 50 T.C. 803, 813 (1968) ("Where a debtor is relieved of his obligation to repay the loan, his net worth is increased over what it would have been if the original transaction had

---

[5] Petitioner does not otherwise contend that the burden of proof as to any matter should shift to respondent under section 7491(a), nor has he established that the requirements for shifting the burden of proof under that section have been met. Accordingly, the burden of proof remains on petitioner. *See* § 7491(a)(2).

[6] In 2017 section 61 was amended, with section 61(a)(12) becoming section 61(a)(11). *See* Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 11051(b)(1), 131 Stat. 2054, 2089.

[*5] never occurred. This real increase in wealth may be properly taxable." (citing *United States v. Kirby Lumber Co.*, 284 U.S. 1 (1931))). COD income is recognized for the year in which the debt is canceled and is taxed at ordinary rates. *Weiderman*, T.C. Memo. 2020-109, at *23−24 (and cases cited threat).

As indicated *supra* p. 4, petitioner does not dispute that Sagasolutions owed $24,948 (plus interest) to Newtown and that Newtown canceled that debt, which, as of the December 30, 2016, cancellation date, totaled $34,964. Instead, petitioner contends that (1) this COD income should not be attributed to him but to Sagasolutions; (2) the debt in any event was discharged before 2016; (3) any COD income that may be attributed to him should be characterized as capital gain; and (4) the portion of the COD income that is interest is excludable from his gross income pursuant to section 108(e)(2). Below we address each contention in turn.

A.      *Tax Consequences to Petitioner of Sagasolutions' Discharged Debt*

Petitioner contends that the COD income arising from Newtown's discharge of Sagasolutions' debt should not be attributed to him but rather to Sagasolutions. Petitioner relies on Conn. Gen. Stat. § 34-251a(a) (2017), which provides:

> A debt, obligation or other liability of a limited liability company is solely the debt, obligation or other liability of the company. A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation or other liability of the company solely by reason of being or acting as a member or manager. This subsection applies regardless of the dissolution of the company.

His rationale is that despite his being Sagasolutions' sole member, because he did not personally guarantee Sagasolutions' line of credit with Newtown, his individual assets cannot be reached to satisfy any outstanding line of credit balance; as a result he did not realize any taxable income when Newtown discharged the debt. Under petitioner's rationale, without a personal guaranty, for a disregarded entity there can be no tax consequences for discharged indebtedness. Such a rationale is ill conceived.

**[\*6]** Although state law governs the legal relationships that are established when an entity is formed, federal law governs whether an entity is taxed, or disregarded, as a corporation. *Moye v. Commissioner*, T.C. Memo. 1997-554, slip op. at 15 (and cases cited thereat). Treasury Regulation §§ 301.7701-1 through 301.7701-3 provide rules for the classification of business entities for federal tax purposes. Known as the "check-the-box" regulations, these regulations generally grant broad discretion to business owners, who can often elect (by "checking the box" for a certain entity type on a form filed with the IRS, hence the name) whether an entity through which they conduct business is treated as an association (i.e., a corporation), a partnership, or a disregarded entity for federal tax purposes. Treas. Reg. § 301.7701-3(a); *see also DAF Charters, LLC v. Commissioner*, 152 T.C. 250, 259–60 (2019) (and cases cited thereat).

The check-the-box regulations do not always grant entity owners a choice, though, listing some types of entities that are irrevocably considered corporations. *DAF Charters, LLC*, 152 T.C. at 260 (citing Treas. Reg. § 301.7701-2(b)). Entities not in this list may elect their treatment, and the regulations provide default options for entities that fail to choose. *Id.* (citing Treas. Reg. § 301.7701-3(b)). In particular, a domestic entity that is not a corporation and has a single owner is disregarded as an entity separate from its owner unless the owner elects otherwise. *Id.* (citing Treas. Reg. §§ 301.7701-2(c)(2)(i), 301.7701-3(b)(1)(ii)). The effect of being disregarded is that, in general, the entity is treated as a sole proprietorship or branch of its owner. *Id.* (citing Treas. Reg. § 301.7701-2(a)). Although the entity may be recognized separately from its owner under state or other federal law, any items of income and loss generated by the entity are directly attributable to and reported by the entity's owner for federal tax purposes (and the entity is not subject to corporate income tax or any partnership or S corporation income allocation rules, all of which are codified under subtitle A of the Code).[7] *Id.*

---

[7] We also note that, pursuant to Treasury Regulation § 1.108-9(a)(3), the insolvency exclusion of section 108(a)(1)(B) applies to the discharged indebtedness of a disregarded entity at the ownership level, i.e., the insolvency exclusion applies to the discharged indebtedness of a disregarded entity only to the extent the owner of the disregarded entity is insolvent; if the disregarded entity is insolvent, but the owner of the disregarded entity is not, then the section 108(a)(1)(B) exclusion does not apply to the discharge of indebtedness income. This regulation would be superfluous if, as petitioner contends, there is no recognition of income from the discharge of debt for the disregarded entity.

**[\*7]**  Sagasolutions never filed Form 8832 with the IRS electing to be treated as a corporation.  As a result, Sagasolutions is treated as a disregarded entity for federal tax purposes, *see* Treas. Reg. § 301.7701-2(a); *see also Comensoli v. Commissioner*, T.C. Memo. 2009-242, slip op. at 8, *aff'd*, 422 F. App'x 412 (6th Cir. 2011), and petitioner, as its sole member, is required to report on his federal income tax return any income (or loss) attributable to Sagasolutions.  Thus, petitioner should have reported COD income of $34,964, i.e., the amount of Sagasolutions' debt that Newtown discharged.

   B.  *Timing of the Debt Cancellation*

Petitioner next contends that Sagasolutions' debt was discharged before 2016.  In support of his contention, petitioner claims that (1) the property used to secure the line of credit was abandoned in 2008 and (2) Sagasolutions' last payment to the line of credit was in 2008.  Petitioner's contention is without merit.

The question as to the year in which a debtor's obligation is canceled (thus giving rise to COD income) is one of fact to be determined on the basis of the evidence.  *Miller Tr. v. Commissioner*, 76 T.C. 191, 195 (1981).  A debt is deemed discharged (and COD income is generated) the moment it becomes clear that the debt will never have to be paid.  *Cozzi v. Commissioner*, 88 T.C. 435, 445 (1987).  Determining when that moment occurs requires a practical assessment of the facts and circumstances relating to the likelihood of payment.  *Id.* (and cases cited thereat).  "Any 'identifiable event' which fixes the loss with certainty may be taken into consideration."  *Id.* (citing *United States v. S.S. White Dental Mfg. Co.*, 274 U.S. 398 (1927)).

Treasury Regulation § 1.6050P-1(b)(2) provides an exclusive list of seven "identifiable events" which constitute a discharge of debt for canceled debt information reporting purposes under section 6050P.  The occurrence of one or more of these events triggers a creditor's obligation to send a Form 1099−C to the IRS and the debtor reporting the COD income.  Treas. Reg. § 1.6050P-1(a).  As relevant here, the third of the seven "identifiable events" giving rise to COD income (and thus the reporting requirement), provided in Treasury Regulation § 1.6050P-1(b)(2)(i)(C), is "[a] cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, *or upon the expiration of a statutory period for filing a*

**[*8]** *claim or commencing a deficiency judgment proceeding*." (Emphasis added.)

With respect to abandoning the property of Sagasolutions that secured the line of credit, petitioner testified at trial that when Sagasolutions ceased to exist in 2008, he "left a lot of . . . furniture" where it had an office and "was shocked in 2009 that [Newtown] hadn't come after [him] for whatever was left of Saga[solutions]." We need not, and do not, accept petitioner's self-serving testimony when he has failed to present credible, corroborative, documentary evidence. *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). Petitioner offered no evidence of what furniture was left behind or its value, nor of whether Newtown was ever informed of the alleged abandonment.

In his opening brief petitioner on the one hand claims that "[i]t is clear from the evidence . . . that [Sagasolutions] was no longer making any payments [with respect to its line of credit with Newtown] as early as 2008," but then on the other hand just a few sentences later in his brief he contends that "it is clear from the Transaction History that no payments were being made [with respect to the line of credit] subsequent to September 2010." The documentary evidence in this case shows that Sagasolutions defaulted on its line of credit sometime in 2010 (not 2008), and at the latest on October 5, 2010, which was the next due date with respect to the line of credit after a final principal payment of $52 was made in September 2010.

Connecticut law mandated that Newtown bring an action within six years of when the action accrued. *See* Conn. Gen. Stat. § 52-576(a) (1971) ("No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of an action accrues . . . ."). With Newtown's right of action accruing sometime in 2010 (and at the latest on October 5, 2010), its opportunity to bring an action with respect to the line of credit expired sometime in 2016 (and no later than October 5, 2016). Newtown did not bring an action (nor did it attempt to seize or foreclose on any of Sagasolutions' property that was pledged as security for the repayment of the line of credit) during the 2010–16 timeframe. When the six-year period for bringing a claim expired, an identifiable event occurred and it triggered Newtown's obligation under section 6050P and the accompanying Treasury regulations to issue Form 1099−C. Newtown properly did so, indicating that as of December 30, 2016, it had discharged the outstanding principal and accrued interest owed on the line of credit (totaling $34,964) because the time in which to bring a

[*9] claim had expired. Consequently, 2016 was the correct year of the discharge of Sagasolutions' debt.

C. *Characterization of the Discharged Debt*

Petitioner further contends that any COD income that may be attributable to him should be characterized as capital gain. In support of his contention, he relies on *L&C Springs Assocs. v. Commissioner*, 188 F.3d 866 (7th Cir. 1999), *aff'g* T.C. Memo. 1997-469, and *2925 Briarpark, Ltd. v. Commissioner*, 163 F.3d 313 (5th Cir. 1999), *aff'g* T.C. Memo. 1997-298.[8] Petitioner's contention is without merit.

In *L&C Springs Assocs.,* the U.S. Court of Appeals for the Seventh Circuit did not opine on the *nature* of the income, which is the focus of the dispute here; rather, at issue in *L&C Springs Assocs.* was *at what time* the taxpayer abandoned certain property, thereby triggering gain from cancellation of indebtedness for purposes of section 1001. *L&C Springs Assocs.*, 188 F.3d at 868. In *2925 Briarpark, Ltd.*, the issue was whether the taxpayer-partner and the limited partnership realized gain from dealings in property under section 61(a)(3), rather than cancellation of indebtedness income under section 61(a)(12); the U.S. Court of Appeals for the Fifth Circuit did not opine on whether the gain was capital. Sagasolutions and Newtown never agreed that Sagasolutions would surrender or abandon the property that secured the line of credit in exchange for Newtown's canceling the debt, and petitioner has taken no steps to show that the resulting COD income was from the exchange of a capital asset as defined in section 1221. The COD income is ordinary income under section 61(a)(12).

D. *Amount of COD Income*

Lastly, petitioner contends that because the line of credit was a business loan and the interest paid with respect thereto would have

---

[8] In a footnote in his opening brief petitioner also attempts to draw support from I.R.S. Priv. Ltr. Rul. 202050014 (Dec. 12, 2020) (which he refers to as "PLR-117300-20"). A "written determination" of the IRS may not be used or cited as precedent, § 6110(k)(3), and written determinations are defined to include IRS private letter rulings, § 6110(b)(1)(A); *see also Plano Holding LLC v. Commissioner*, T.C. Memo. 2019-140, at *17 n.6 ("Private letter rulings have no precedential value and merely represent the Commissioner's position as to a particular set of facts.") (and cases cited thereat). In any event, I.R.S. Priv. Ltr. Rul. 202050014 is not helpful to petitioner. Like *L&C Springs Assocs.* and *2925 Briarpark, Ltd.*, as discussed above, I.R.S. Priv. Ltr. Rul. 202050014 addresses a situation factually distinct from the instant case.

**[*10]** been a deductible business expense, the portion of the COD income that is interest ($10,016) is excludable from his gross income under section 108(e)(2). Petitioner's contention is without merit.

Section 108(e)(2) provides that no income shall be realized from the discharge of indebtedness to the extent that payment of the liability would have given rise to a deduction. As tax deductions are a matter of legislative grace, *Segel v. Commissioner*, 89 T.C. 816, 842 (1987), the taxpayer has the burden of (1) proving that any claimed deduction is allowable pursuant to some statutory provision and (2) substantiating the expense giving rise to the claimed deduction by maintaining adequate records, § 6001; *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001); *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976). Section 163(h)(1) provides that in the case of a taxpayer other than a corporation no deduction is allowed for personal interest paid or accrued during the taxable year. Interest paid or accrued on indebtedness properly allocable to a trade or business is excluded from the definition of personal interest and so is deductible. § 163(h)(2)(A).

Petitioner offered no evidence at trial that the $10,016 of interest, which accrued after the last principal payment was made with respect to the line of credit, would have been an ordinary and necessary business expense. Statements in a party's brief, such as petitioner's assertion regarding the interest, are not part of the evidentiary record. *See* Rule 143(c) ("[S]tatements in briefs . . . do not constitute evidence."); *see also Ashkouri v. Commissioner*, T.C. Memo. 2019-95, at *36. Indeed, the evidentiary record unmistakably shows that Sagasolutions stopped doing business in 2008 and that 2009 was the last year that Sagasolutions' income (or loss) was reported to the IRS, *before* the interest started accruing in 2010. Accordingly, the total amount of the canceled debt, i.e., $34,964, is COD income to petitioner for 2016.

E.    *Conclusion*

In sum, petitioner has not shown that the IRS's determination with respect to the COD income of $34,964 for 2016 was arbitrary or erroneous. Accordingly, we sustain the IRS's determination.

**[*11]**  We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*